Sherman *v.* Barnard.

[MONROE GENERAL TERM, March 5, 1855. *Johnson*, *Welles* and *T. R. Strong*, Justices.]

————— •••• —————

SHERMAN, survivor, &c. *vs.* BARNARD, impleaded with Sisson and Chapman.

The act of the legislature, of July 10, 1851, " to provide for the completion of the Erie canal enlargement and the Genesee Valley and Black River canals," having been pronounced by the court of appeals unconstitutional and void, and contracts executed under that act having been also declared void, the sale and transfer of such a contract does not constitute a good consideration for a promise to pay money.

The mere circumstance that the purchasers stipulated to take the risk as to the validity of the act of the legislature, and of the contract, will not vary the law of the case.

The sale of an absolutely void chose in action will not form any consideration for a promise. If void, no legal obligation.is created by it; and it is, in the view of the law, as if it did not exist.

The principle is the same, notwithstanding the chose in action is salable in market for even the full value that would attach to it if valid. If the law does not recognize it as having some binding force, and will not enforce it, a note given upon the sale of it will be invalid for want of consideration.

APPEAL by the plaintiffs from a judgment entered at a special term of the court. The complaint alleged that about the 3d of May, 1852, the defendant Barnard sold and transferred in writing, to Sherman and Moore, the plaintiffs, for $2000, a certain written contract, and all his rights therein, dated the 29th of December, 1851, executed by Barnard of the first part, and the canal commissioners and the state and division engineers on the part of the people of the state, of the second part, under the provisions of the act entitled "An act to provide for the completion of the Erie canal enlargement and the Genesee Valley and Black River canals," passed July 10, 1851, by which contract it was agreed that Barnard should construct a certain section of the Erie canal enlargement, and should be paid therefor a compensation provided by said contract out of the surplus revenues of the canals, and the avails of sales of canal revenue certificates, as authorized by said act; that in consideration of said sale and transfer and to secure payment of said $2000, Moore, on the joint account of Sherman and himself, executed and delivered his promissory note to Barnard for $500, payable one day after date, and Sherman and Moore also executed and delivered to Barnard their two promissory notes for $750 each, one payable in six months, and the other in twelve months from date, each of which notes was dated the 3d day of May, 1852, and was payable to Barnard or bearer; that on the 8th of May, Moore paid said $500 note, to Sisson & Chapman, in whose hands Barnard had placed it for collection, by executing and delivering to them his other promissory note for $500; that Sisson & Chapman then held $300 part of the $500 so paid by Moore; that at the time of said sale and transfer, Barnard had done nothing in performance of said contract; that the terms of said contract had not not been approved by the canal board; that said act, under which it was made, was unconstitutional and void; that said contract was incomplete and void for want of the approval of the canal board; that said promissory notes were without consideration and void; that Barnard intended to transfer said $750 notes before their maturity, and that they were then in his possession. For a further cause of action, the

complaint alleged that the defendants Sisson & Chapman had paid to Barnard $200, part of the $500 paid to them by Moore ; that said payment was without consideration ; and that Barnard was indebted to Sherman and Moore therefor. The complaint demanded a perpetual injunction, restraining Barnard from disposing of the two $750 notes, and that he be directed to cancel and deliver them to Sherman and Moore ; that Sisson & Chapman be restrained from paying over the $300 in their hands, till the further order of the court ; and that Sherman and Moore recover of Barnard $200 and interest, with costs. The amended answer of the defendants alleged, substantially, that about the 3d of May, 1852, it was verbally agreed between Barnard of the one part, and Sherman and Moore of the other part, that he should sell and transfer to them, and they should purchase, said contract and all his rights under it, at their own risk as to its validity, and as to the validity and constitutionality of the act under which it was made, and that he should execute to them a power of attorney irrevocable, to receive pay under said contract ; that they should pay him therefor $2000, whatever might be the decision of the court of appeals as to the constitutionality and validity of said act, or as to the validity of contracts made under it ; that is, $500 on the said 3d of May, $750 in six months, and $750 in twelve months from said 3d of May, and also should pay him further $500 in case said court of appeals should not decide that portion of said act, which provides for raising money by sale of canal revenue certificates, unconstitutional, within six months from said 3d of May, as follows : $250 in six months, and $250 in twelve months from said 3d day of May ; that they should make and deliver to Barnard their promissory notes for the said two sums of $750 each, and should make their two notes for said two sums of $250 each, and deliver them to some third person, to be returned to the makers or to be delivered to Barnard, according to the condition above stated respecting the decision of the court of appeals, and should indemnify Barnard against his liability to perform said contract, and to pay laborers for work done under it ; that in pursuance of said agreement, Barnard transferred said contract to Sherman and Moore, as

alleged in the complaint, and executed a power of attorney to them, and they executed and delivered to him the two $750 notes mentioned in the complaint, and also an indemnifying bond, and also executed their two promissory notes for $250 each, payable as provided in said verbal agreement, and delivered them to William Clark, jun. with a written memorandum signed by Barnard, and by Sherman and Moore, declaring the conditions respecting them above stated. It alleged that the terms of said contract had been approved by the canal board; that said act, so far as it affected the validity of said contract, was constitutional; that said contract was valid, and that said two $750 notes were executed for a good consideration, and were valid. It also alleged that when said verbal agreement was made, it was doubtful whether said contract was valid, and whether the act under which it was made was constitutional; that the auditor of the canal department had refused to recog-nize any contract made under said act, as binding upon the state; that actions were then pending in the court of appeals, in which the constitutionality of said act, and the validity of all contracts made under it were at issue; that said facts were well known to Sherman and Moore, and that said contract was, at the time of sale, and ever since had been, of considerable pecuniary value. It also alleged that the $500 note was paid to Sisson & Chap-man in cash, and denied that they accepted another note in payment thereof. The plaintiffs demurred to the answer, for insufficiency. Justice WELLES, at special term, gave judgment for the defendant, on the demurrer. The defendants Sisson & Chapman did not answer the complaint. The issues of fact made by Barnard's amended answer were brought to trial at the circuit in Wayne county, in October, 1853, before Justice T. R. STRONG, a jury having been waived, and judgment was ordered for Barnard upon the whole case with costs, and the in-junction was dissolved. The plaintiffs appealed to the general term. The plaintiff Moore died subsequent to the perfecting of the appeal.

*J. C. Smith,* for the appellant. I. It cannot now be controverted, that the act of July 10, 1851, referred to in the pleadings, was unconstitutional; and that, it being so, the canal contracts entered into under its provisions, of which the contract is question is one, were made *without authority* on the part of the persons who assumed to act in behalf of the state, in making them, and the people of the state were not, in any sense, bound by them. (*Newell, auditor, &c.* v. *The People, on the relation of Phelps,* 3 *Selden,* 9.)

II. It follows, therefore, that the assignment of the contract, by Barnard to Sherman & Moore, was not a valid consideration for a promise, and that the promissory notes executed and delivered by them, therefor, are void for want of consideration. (*Parish* v. *Stone,* 14 *Pick.* 198, 203.) (1.) In all the various cases cited by the defendant's counsel, in the court below, including those referred to in the opinion of the court, there existed one or more valid and legal considerations, upon which their decision turned; neither of which is to be found in the case in hand. In one class of cases, the consideration was the *prevention of litigation,* and the *settlement of disputes,* between the parties. There was either the *giving up a suit or proceeding instituted* to try a doubtful question, or there was the *compromise* of doubtful and *conflicting* rights and claims. Of this class, are *Russell* v. *Cook,* (3 *Hill,* 504;) *O'Keson* v. *Barclay,* (2 *Penn.* 531;) *Taylor* v. *Patrick,* (1 *Bibb.* 168;) *Fisher* v. *May's heirs,* (2 *Bibb,* 448;) and *Stewart* v. *Ahrenfeldt,* (4 *Denio,* 189.) These cases have no application to the case in hand, because in the latter, there was no *litigation,* pending or expected; no *claim or right,* doubtful or conflicting; no settlement; and no compromise. The only transaction between the parties, was a naked purchase and sale. Another class, consists of actions on promissory notes, or other evidences of debt, given for the sale of *choses in possession,* where the *want* of consideration was set up as defense, but the proof showed merely, an *inadequacy* or *partial* failure of consideration. While these cases hold that mere inadequacy or partial failure of consideration, is no defense, they all affirm the principle that

Sherman *v.* Barnard.

where the thing purchased is *entirely valueless* to both parties at the time of sale, there is no consideration; and they show that the difficulty of defending upon this principle in an action for the purchase price of a chose in *possession,* consists in the almost impossibility of establishing that any thing which has an actual, corporeal existence, is entirely worthless, to the vendor, as well as the vendee. Such are the cases of *Johnson* v. *Titus,* (2 *Hill,* 606;) *Welsh* v. *Carter,* (1 *Wend.* 185;) *Perley* v. *Balch,* (23 *Pick.* 283;) *Wright* v. *Hart,* (18 *Wend.* 454.) No such difficulty is presented in the case of *choses in action,* as they exist only *in law,* and the sale of them is not a valid consideration for a promise, unless they have some legal value. A third class, consists of actions on notes or other securities, given for the sale or assignment of *choses in action,* when the alleged defense was a *want* of consideration, but the proof showed, not that, the facts being certain and undisputed, the chose was invalid and valueless, *in law,* but merely, either that *doubt existed* at the time of the purchase, in respect to some *material fact ;* or that the facts turned out to be *different from what they were supposed to be,* at the time of the purchase. Of this class are *Perkins* v. *Bumford,* (3 *N. H.* 522;) *Williams* v. *Hicks,* (2 *Verm.* 36;) *Costar &c.* v. *Brush &c.* (25 *Wend.* 628, 633;) *Barnum* v. *Barnum,* (8 *Conn. R.* 469;) *Earl of March* v. *Pigot,* (5 *Burr.* 2802.) These cases are inapplicable to the one in hand. The agreement in this case, did not involve any chance of benefit depending upon any doubtful state of *facts ;* but the facts being well known to both parties, there was supposed to be a chance merely that the assigned contract was *valid in law.* In other words, in all this class of cases cited, there was no question about the validity *in law* of the thing purchased, but it was doubtful whether the facts were such that it was of any value; while in this case, the doubt was purely as to the *legal validity* of the contract, there being no question as to the facts. (2.) The circumstances, that at the time of the assignment, the questions as to the constitutionality of the act, and the validity of the contracts made under it, were pending in the court of appeals, and it was doubtful how they

would be decided ; and that the plaintiffs obtained by their pur-
chase the supposed chance of all the benefits which would have
resulted to the holder of the contract, from a decision in favor
of the validity of the contracts, did not, separately or conjointly
constitute a valid consideration for the notes in question. In
legal theory, there was no such *chance*. The law is a science,
not a lottery. The act was unconstitutional, and the contracts
invalid, *ab initio*. The court of appeals did not make them so,
but only *declared* them so. Every contracting party is pre-
sumed to know the law, and to contract with reference to it.
In legal presumption, the parties *knew* the contract was void,
at the time it was assigned, and therefore, there was no such
chance. In a legal sense, there was no possibility of any ben-
efit to be derived from the contract, and the supposition of the
parties, if they entertained any, that the contract was, or ever
would be of any value, was ideal merely. The purchase of a
mere ideal right, or the assumption of a mere ideal liability, is
not a good consideration for a promise. (*Cabot et el.* v. *Has-
kins et al.* 3 *Pick.* 83. *Fowler* v. *Shearer*, 7 *Mass. R.* 14.
*Shearer* v. *Fowler*, 7 *id.* 31. *Ehle* v. *Judson*, 24 *Wend.*
97. *Morey* v. *Town of Newfane*, 8 *Barb.* 645. *Dickenson* v.
*Hall*, 14 *Pick.* 217.) (3.) The circumstance that the con-
tract had a *marketable* value, at the time of sale, does not con-
stitute a consideration. Whatever value of that nature it may
have had, was altogether speculative and fanciful. The only
question is whether it had any *legal* value. As it was void in
law, it was in law valueless. (*Rodman* v. *Munson*, 13 *Barb.*
63 ; *S. C. id.* 188.) (4.) The case is not altered by the fact
that the purchasers *expressly* assumed the risk of the legal
validity of the contract. The law would have devolved it upon
them, if there had been no express agreement respecting it.
There is no implied warranty, by the vendor or assignor of a
*chose in action*, that the *chose* is valid in law.

III. The contract which was assigned by the defendant,
having been entered into with him by certain officers of the
state, with intent to create a debt against the people of the
state without authority and in violation of provisions of the con-

Sherman *v.* Barnard.

stitution, the agreement of the parties for the purchase and sale of the said contract was against public policy, and therefore void. (1.) The contract was one of many contracts, parts of one scheme, which, if it had been carried out, would have *created a debt* upon the state, of over ten millions of dollars. The act of entering into these contracts by the state officers was a violation of the constitution, (*Art.* 7, § 12,) which provides that "no debt shall be hereafter contracted by or *on behalf of* this state," &c., and was an *illegal* act in the same sense that an act forbidden *by statute* is illegal. (*Craig et al.* v. *The State of Missouri,* 4 *Pet.* 410, 436.) As far as *civil* rights and remedies are concerned, there is no distinction between an act *malum prohibitum* and *malum in se.* Both are equally forbidden, unlawful and immoral. (*Pennington* v. *Townsend,* 7 *Wend.* 276, 280.) Would not the sale of bank bills issued in violation of the restraining act; both parties knowing the facts, be void as against public policy, on the ground that the tolerating their purchase and sale would tend to encourage the issuing of them? (2.) It is a well settled principle, that wherever the tolerating any species of contracts has a tendency to produce a *public* mischief or inconvenience, such a contract is void as against public policy. (*See Cole* v. *Gower,* 6 *East,* 610; *Gilbert, Clerk,* v. *Sir Mark Sykes,* 16 *id.* 150; *Patton* v. *Nicholson,* 3 *Wheat.* 204; 4 *Cond. U. S. R.* 234; *Craig et al.* v. *State of Missouri,* 4 *Pet.* 437; *Merrell* v. *Legrand,* 1 *How. Miss. R.* 150; *Cowen* v. *Boyce,* 5 *id.* 769; *Brien* v. *Williamson,* 7 *id.* 14.) (3.) Courts of equity will, in general, set aside, cancel and direct to be delivered up, written instruments, where they are voidable by reason of a fraud against public policy, although the party plaintiff has participated therein, when public policy would be defeated by allowing it to stand. (2 *Story's Eq. Jur.* §§ 695, 695 *a.*) So where they are void. (*Id.* § 700.) The relief is required by the public interest, and it is given to the public through the party. (1 *Id.* § 298. *St. John* v. *St. John,* 11 *Ves.* 535. *Hatch* v. *Hatch,* 9 *id* 292, 298. *Gilbert* v. *Chudleigh,* 9 *id.* 300, *Am. ed. note.*) Again, where the action proceeds in disaffirmance of such a contract, and instead of

endeavoring to enforce it, presumes to it be void and seeks to prevent the defendant from retaining the benefit which he derived from an unlawful act, there it is consonant to the policy and spirit of the law, that the plaintiff should recover. (*Per Wilde, J. in White* v. *Franklin Bank,* 22 *Pick.* 181, 185, *citing* 2 *Com. on Contr.* 109.)

*By the Court,* T. R. STRONG, J. The consideration of the notes of May 3d, 1852, set forth in the complaint, as is substantially alleged in both the complaint and answer, was the sale and assignment of the canal contract in the complaint mentioned, executed in behalf of the state, in pursuance of the provisions of the act of the legislature of July 10th, 1851, entitled " An act to provide for the completion of the Erie canal enlargement and the Genesee Valley and Black River canals," which act the court of appeals has pronounced unconstitutional and void. (*Newell* v. *The People,* 3 *Selden,* 9. *Rodman* v. *Munson, referred to in that case, and reported in the supreme court in* 13 *Barb.* 63, 188.) In those cases the court also decided that contracts executed under that act, were made on the part of the state without authority, and were therefore void.

It is urged on the part of the defendant, that the provisions of the act in relation to letting the work are constitutional, although the rest of the act may not be; that they are not connected with or dependent upon the parts of the law which relate to the issuing of revenue certificates; that they do not essentially change the law as it existed before and at the time of the passage of the act, except as to the officers who are to execute the act on the part of the state; and hence the contract is valid. The counsel insists that this point was not raised, discussed or decided in the court of appeals in the cases referred to, and that the question which it presents is an open one. It is sufficient in regard to it to say, that there is a close and material connection between the provisions for entering into contracts for the work, and those in respect to making payments for the same; that the former are at least impliedly and substantially dependent upon the latter; that the act forms a

general plan or scheme, of which the provisions for paying for the work are the principal and most important, and in reference to which all the others were made ; and that they being in conflict with the constitution, the scheme as such is unconstitutional and the entire act void.

The theory of this action is, that the canal contract is void on account of the unconstitutionality of the act referred to; that being void, the sale of it was not a valid consideration for the notes, which are therefore void; and that not being liable on the notes, the plaintiff is entitled to be protected against their being passed to a *bona fide* holder, and to have them delivered up to him and canceled; and also, to be repaid what he has paid on them.

Regarding the contract as void, which I must do under the decision of the court of appeals, and for the reason stated, the principal question to be considered is, was the sale and transfer of the contract a sufficient consideration to support the notes? In *Rodman* v. *Munson*, it was held that a note given upon a purchase of a canal revenue certificate issued under the act, was void for want of consideration. The action was upon the note: the defense set up was, that the act was in conflict with the constitution, and void; that the certificate was for that reason unauthorized and void; and that the sale and transfer of the certificate, it being invalid, was not any consideration for the note. This defense was sustained in the supreme court, at special and general term, and in the court of appeals.

It does not appear that the question, whether the sale of the certificate, assuming the act under which it issued to be void, formed a valid consideration for the note in that case, was discussed by counsel in the court of appeals or examined by the court. In the supreme court, in the opinion at special term, it is said, "If the certificate is void and without pecuniary value, then the note is without consideration, and its payment cannot be enforced;" and in the opinion of one of the justices at general term, the question is adverted to, and is the subject of a few brief remarks. The point was so directly involved

in the case and the decision, that it must have received all the attention supposed to be due to it, both in the court of appeals and in the supreme court, although it is probable, judging from the reports of the case, that there was not in either court much labor or thought bestowed upon it. In both courts it appears to have been viewed and treated as free from any difficulty.

I am inclined to regard the decision in that case, as controlling authority that a sale of such a certificate, and upon the same principle a sale of such a canal contract as in the present case, without any special circumstances, is not in law a consideration for a promise to pay money. But, independent of that decision, the naked legal proposition that the sale of an absolutely void chose in action will not form any consideration for a promise, is, I think, incontrovertible. If void, no legal obligation is created by it; and it is, in the view of the law, as if it did not exist. Void things are as no things; and some value is essential to a valid consideration. (*Story on Contracts*, § 443.) The principle is the same, notwithstanding such chose in action is salable in market for even the full value that would attach to it if valid. If the law does not recognize it as having some binding force, and will not enforce it, a note given upon the sale of it will be invalid for want of consideration. It has no intrinsic, no legal value, and therefore in law no value. Although salable in market, if the sale is on credit no legal debt is thereby created; payment may be resisted for want of consideration; and, if the sale is for cash, if the money paid cannot be recovered back it is not because a consideration was received for it, but upon the principle which precludes the recovery of money voluntarily paid, with a full knowledge of all the facts.

It is set up in the answer in this case, that at the time of the sale of the canal contract, and the execution of the notes, the question of the constitutionality of the act of the legislature, and the validity of the contracts made under it, was pending and undetermined in the court of appeals, and that the purchase of the contract was made with express reference there-

to, and at the risk of the purchasers, in respect to that question and the decision; they agreeing to pay a certain sum absolutely, and a further sum in case the law should be declared valid. And it is claimed on the part of the defendant, that these facts distinguish the present case from that of *Rodman* v. *Munson,* and bring it within the principle of the law that the compromise or purchase of a doubtful claim is a good consideration for a contract. The learned justice at special term took this view of the case, and placed his decision upon that principle.

Compromises of doubtful claims are held by the law a sufficient consideration for a promise founded upon them, for the reason that they have for their object the prevention of litigation, which is important to the parties and the public. (*Chitty on Contracts,* 4*th Am. ed.* 36. *Story on Cont.* § 440. *Russell* v. *Cook,* 3 *Hill,* 504. *Stewart* v. *Ahrenfeldt,* 4 *Denio,* 189.) But the claims must be really doubtful; if they are manifestly without foundation, a settlement of them will not support a promise.

The doctrine that a sale of a doubtful right is a good consideration, must stand upon a different foundation. It must be that the claim has some legal value; that there is a legal possibility that it can be enforced and prove a benefit to the purchaser. When the doubts relate to the facts, then there is such value and such a possibility.

The mere circumstance that the purchasers stipulated to take the risk as to the validity of the act of the legislature, and the contract, does not vary the law of the case. It is important as evidence that the transaction was regarded and treated as the sale and purchase of a doubtful right; but if the contract was of no value, and the principle as to doubtful rights which is invoked is not applicable, that stipulation was without consideration and void. In all cases of sales of choses in action or possession, having any value so as to constitute a consideration for the price paid or agreed to be paid, in the absence of fraud, and warranty express or implied, and any express stipulation on the subject, the law casts on the purchaser all risks. The

only doubts in relation to the contract in this case which existed were, whether the act of the legislature was in conflict with the constitution or not, and if it was, whether contracts under it were void or valid. All the facts connected with them were well understood, and the questions were purely questions of law.

No case has been cited holding that the sale of a worthless claim is a good consideration merely because doubts were entertained as to the law in relation to it, when all the facts were known and conceded, and I have not found any such case. I am not able to assent to the position. The existence and extent of doubts on legal questions must, in fact, depend very much on the legal attainments of individuals; legal principles familiar and clear to some, are unknown or quite obscure to others; and to ascertain whether there were serious doubts in any given case, an issue must be formed and proof given upon it, or the court must speculate on the subject. I think no such inquiry can be instituted, and that the maxim of the law applies, that every man is presumed to know the law. (*Broom's Legal Maxims*, 122.)

In *Cabot* v. *Haskins*, (3 *Pick.* 83,) the defendants erroneously supposed they were under a legal liability to the United States, arising out of facts well known to the parties, and promised to pay the plaintiffs a sum of money on their assuming the risk and agreeing to indemnify the defendants. The promise was held to be without consideration and void. Parker, Ch. J., in delivering the opinion of the court, says : " We cannot suppose that a mere ideal danger, which has no foundation in fact or in law, can form the substratum of a contract by which the one who assumes it can claim indemnity." And again, " There must be, as a legal foundation for a promise, either an actual danger, or a suspension or forbearance of right, or a possibility of loss, occasioned to one to whom the promise is made, to give it validity." In *Morey* v. *The Town of Newfane*, (8 *Barb.* 645,) it was held that a claim against a town for damages occasioned by a highway being out of repair, being without foundation, was not a sufficient consideration for a promise made by the town, by a vote of the electors at town meeting, to pay

the claim. These cases, and others of a similar character, tend to support some of the views above presented.

It is made a point by the defendants' counsel, that the answer sets up a perfect defense to the action, inasmuch as it alleges that the notes were given in consideration of the execution and delivery of the assignment and power of attorney and the delivery of the contract at the risk of the purchasers; and also, that the contract had value. The position as to the statement of the consideration of the notes is not quite correct in fact. The answer alleges that the consideration was the sale, assignment, transfer, conveyance and delivery of the contract at the risk of the purchasers, and also the execution and delivery of the power of attorney. The substance of the transaction was a sale of the contract. In regard to the general allegation that the contract had value, it is not entitled to any weight when upon the facts stated it appears the contract had no value.

No demand of the notes before suit was necessary to the right of action; and no offer to return the contract was required, it being valueless.

In my opinion the plaintiff is entitled to some portion at least of the relief demanded, and the judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

[MONROE GENERAL TERM, March 5, 1855. *Johnson, Welles* and *T. R. Strong,* Justices.]