E. F. BROWNELL v. J. R. TALCOTT.

*Duress of Imprisonment. Rescission of Contract.*

If one, claiming that he has purchased property, but knowing that he has not, maliciously, and without probable cause, sues out a writ in trover for it, for the purpose of frightening and coercing the owner to sell it to him; and the owner, being a man of ordinary firmness, is thereby induced, through fear of arrest and imprisonment, to make such sale, the sale is void for duress of imprisonment.

*Held*, that it was not necessary, to make the defense of duress of imprisonment available, that the pretended vendor should have offered to rescind the contract, and return a note given for the purchase money.

TROVER for a wagon. Plea, the general issue; trial by jury, and verdict for defendant, April term, 1874. PIERPOINT, Ch. J., presiding. •

The case was, the plaintiff bought a lot of property of one Thompson, on December 17, 1872, which was in the defendant's possession, and paid him therefor $150 in money, and his note for $75 on six months. The plaintiff claimed that he supposed he bought the wagon in question with the other property, at the price of $250 for the whole, and supposed the note he gave was for $100 instead of $75; while the defendant claimed that the plaintiff's purchase did not include the wagon, as the plaintiff well knew. When the plaintiff went to get the property, Thompson would not let him have the wagon, claiming he had not bought it, and that he had only given him a note for $75. The plaintiff claimed he had bought the wagon, and offered to give Thompson a note for $100, which Thompson refused. The plaintiff then proposed to rescind the whole trade; but Thompson would not. The next day the plaintiff, acting under the advice of counsel, tendered Thompson a note for $100, and demanded the wagon; but Thompson refused to receive the note, or deliver the wagon. The plaintiff thereupon, on the 19th of December, sued out a writ in trover against Thompson, for the wagon, and went to him with an officer, to serve it. On this occasion, Thompson gave up the $75 note, and took a $100 note, dated December 17, 1872, payable to his order, on the first day of April then next, and told the plaintiff

that he might have the wagon—which was still in the defendant's possession—and that he could call on the defendant and get it. On the same day the plaintiff told the defendant to keep the wagon for him till he called for it, which the defendant agreed to do ; but on the following day told the plaintiff he could not have the wagon ; and on the next day, the plaintiff called on the defendant for the wagon, and he refused to let him have it.

The defence was, that Thompson did not sell the wagon to the plaintiff on the 17th of December, and that the transaction of the 19th of December, whereby the plaintiff induced the exchange of notes and bought the wagon, was brought about by duress of imprisonment, and therefore void.

To sustain this defence, the defendant introduced said Thompson as a witness, who testified that when the plaintiff and the officer came to serve the writ, the officer told him he had a body writ against him ; that the plaintiff told him if he would give up the $75 note, and take a $100 note, and let him have the wagon, it would be all right, otherwise he should have to let the suit go on ; that the officer read the writ to him ; that it read for $150, and for want of property to secure it, to take the body, and he knew he had no property, and therefore supposed they would put him in jail, and so he changed the notes, and told the plaintiff he might have the wagon ; that he had never been sued before, and knew nothing about arresting folks, or any thing about law in that respect, and that nothing was said to him about bail ; that there was no one around with whom he could talk, except the women folks, and he did not suppose he could find out anything by them ; that the plaintiff treated him civilly, and the officer was pleasant ; that they said nothing about taking him to jail, only what was said in the writ. The witness further testified that the night after this transaction, on consultation with friends, he told the defendant not to let the plaintiff have the wagon.

The plaintiff's evidence tended to show, that whatever he did in connection with said suit and the service of the writ, was done under advice of counsel, and in good faith, without malice, believing that he bought the wagon on the 17th December. Thomp-

son never demanded the $75 note, nor offered to return the $100 note, but retained it, and produced it in court.

The plaintiff requested the court to charge the jury, that the defendant's evidence did not tend to show duress of imprisonment; and that, at all events, the defendant could not avail himself of such defence, because Thompson had not offered to return the $100 note and demanded the $75 note; also, that the defence of duress was personal to Thompson, and could not be set up by the defendant.

The court refused to charge as requested, but charged as follows:

" In order to make the proceeding of such a character as to invalidate the transaction, it is necessary that the suing out of the writ in trover against Thompson should have been instituted by the plaintiff, without reasonable or probable cause, and maliciously, for the purpose of inducing Thompson to accede to the plaintiff's terms in respect to the sale of the wagon in question. Upon this question it becomes material to look at how the transaction of December 17th was in fact understood by the plaintiff —whether he understood and believed, in view of all the circumstances, that he had, in fact, bought this wagon; because, if he believed that, he had a perfect right to do what he did. But if, on the other hand, the jury are satisfied that the plaintiff did not get a title to the wagon by virtue of the trade of December 17th, that he knew he did not, and he used this means for the purpose of forcing Thompson into a trade such as he should dictate in respect to it, such as should embrace the wagon, and if he, knowing that he had no claim, instituted this proceeding against Thompson, and pursued it in the manner that he did, then the plaintiff was not justified in that proceeding, he was proceeding illegally; that notwithstanding he may have had a legal process upon that occasion, properly issued, and legal in form, and properly proceeded with so far as the form of the thing was concerned, still, if he sued it out maliciously, without cause —knowing that he had no claim—knowing that he had not purchased the property; but instituted this proceeding for the purpose of frightening and coercing Thompson, then, notwithstanding the legality of the form of the proceeding, the whole thing was illegal and irregular, and such as he had no right to institute.

" Then the question presents itself as to its effect upon Thompson. Did Thompson yield to that demand through coercion, through fear of arrest, through the dread of being arrested and

imprisoned upon that process, so as that he did that which he would not have done if he had not been so coerced by this fear, and this threat of proceeding against the body. And in judging of that, you must be satisfied, gentlemen, that this threat which was over him, this proceeding which was against him, this fear and dread of this process, was of such a character, that a man of ordinary firmness would be influenced and controlled by it. It is not the fact that a man is needlessly alarmed, without cause— that he is a weak and timid man, and yields to that which a man of reasonable firmness and reasonable intelligence ought not to yield. But if this proceeding was of such a character, if this threat was of such a character, as would lead a man of ordinary firmness to yield or submit to a claim of this kind, and he did yield to it, and acted under that influence, and, in consequence thereof, Brownell was enabled to carry out the purpose that he had in that proceeding, and thereby induced Thompson to surrender the wagon and accept of that note, then the court tell you that that transaction was of such a character that it was void as between these parties, and that Thompson would not be bound by that agreement to surrender the wagon and the acceptance of that note."

The court also charged, that the fact that the $100 note was not offered to be surrendered, was not, under the circumstances of the case, a legal reason why this defence could not be set up by the defendant, provided the jury found that the transaction upon the 19th of December was brought about by the plaintiff, maliciously, and in bad faith, and without cause, in the manner before indicated.

To the refusal to charge as requested, and to the charge as given, the plaintiff excepted.

*E. F. Brownell* and *R. H. Start*, for the plaintiff.

As the case shows that Thompson has never notified plaintiff that he repudiated the contract of sale on the ground of duress, or any other ground—that he has never offered to return the note given therefor, and never offered to rescind the contract and to return the note, and thereby place the parties in *statu quo*—the defendant cannot set up the duress of Thompson as a defence to this action. *Burton* v. *Stewart*, 3 Wend. 236. Contracts made under duress are not void, but voidable only, for they may

be ratified and affirmed. 1 Parsons Cont. 395. Hence, the title must pass to the vendee, and give him sufficient title to maintain trover, at least against one not a party to the contract.

The privilege of avoiding a contract on the ground of duress, is personal, and no one but the party himself can take advantage of it as a defence. *Robinson* v. *Gould*, 11 Cush. 57 ; 1 Parsons Cont. 392, n. 7.

Where a party is threatened with arrest of imprisonment upon a legal process, as in this case, if there is no unlawful force, constraint, or severity, there can be no duress in law, unless it appears that such process was sued out maliciously, or without probable cause. 2 Greenl. Ev. § 302 ; *Watkins* v. *Baird*, 6 Mass. 502 ; *Driggs* v. *Burton*, 44 Vt. 124.

*Henry Ballard* and *L. L. Lawrence*, for the defendant.

The jury must have found, upon the charge given, that Brownell did not purchase the wagon when he purchased the other property ; that he knew he did not purchase it ; that he sued out his writ of trover against Thompson without cause, and with malice, for the purpose of forcing Thompson to sell him the wagon ; that Thompson was induced, through fear of arrest and imprisonment, to agree to sell the wagon ; and that the threats of arrest and imprisonment which caused that fear in him, were such as would have induced a man of ordinary firmness and intelligence to do as Thompson did. These facts constitute duress. 6 Mass. 511 ; *Whitefield* v. *Longfellow*, 13 Me. 146 ; *Foshay* v. *Ferguson*, 5 Hill, 157. The evidence tended to show all the facts found, and fully justified the finding of the jury.

This plea can be set up by Talcott, for he was directed by Thompson not to deliver the wagon, and acted under his authority. *Lovejoy* v. *Lee*, 35 Vt. 430.

It was not necessary that Thompson should have offered to exchange notes. The question here is one of title to the property. It is clear that the plaintiff must show title, in order to maintain this action. " One who obtains goods by fraud or violence, cannot make a good title by showing that he paid part of the value of the property." BRONSON, J., in *Foshay* v. *Ferguson*, *supra*.

Even where possession has been obtained to the property, it may be retaken by the vendor, or suit maintained, without previous demand. *Hodgeden* v. *Hubbard et als.* 18 Vt. 504; *Cary* v. *Hotaling*, 1 Hill, 313; *Badger* v. *Phinney*, 15 Mass. 363; *Buffington* v. *Gerrish*, 15 Mass. 158; *Yates* v. *Carnsew*, 3 C. & P. 99. And when a note has been given in payment of property so obtained, it is not necessary to tender it back, before bringing suit to test the title. *Thurston* v. *Blanchard*, 22 Pick. 18; *Stevens* v. *Austin*, 1 Met. 558. The note forced upon Thompson has not been negotiated by him, but was brought into court. The same rule which obtained in cases above cited, seems to be decisive of this question, and would enable Thompson to defend his title to the property in this action, notwithstanding he did not tender back the note before the suit was brought against him.

The opinion of the court was delivered by

REDFIELD, J. This action is trover for the conversion of a wagon. The plaintiff bought certain personal property of Charles Thompson (under whom defendant claims title), paid him $150 in money, and gave his note for $75, and claimed that his purchase included the wagon. Thompson denied that he sold the wagon. Plaintiff admitted that the note should have been for $100 instead of $75, but claims that it was written by defendant, and that he signed it without reading, or knowing its tenor, supposing it to have been for $100. Afterwards plaintiff demanded the wagon, and brought a suit in trover for its conversion; and when the writ was being served, Thompson consented to plaintiff's claim, took plaintiff's note for $100 in lieu of the $75 note, and agreed that the wagon was sold to the plaintiff. Plaintiff then demanded the wagon of the defendant, who had it in possession, and on his refusal, brought this suit. The defendant, standing in Thompson's place, claims that the exchange of notes and consent that the wagon should be included in the sale to the plaintiff, was induced by menace and duress of imprisonment, and under the charge of the court, this fact has been found by the jury.

I. The court charged the jury, that "if the plaintiff sued out the writ against Thompson, maliciously, without cause, knowing

that he had no claim—knowing that he had not purchased the property—but instituted this proceeding for the purpose of frightening and coercing Thompson, then, notwithstanding the legality of the form of the proceeding, the whole thing was illegal and irregular, and such as he had no right to institute ;" and, " that the plaintiff was not entitled to recover by force of what transpired on the 19th December, between Thompson and the plaintiff, provided the jury found that the transaction was brought about by the plaintiff, maliciously, and in bad faith, and without cause, in the manner before indicated." There would seem no reason for the plaintiff to charge fault in this charge. If the plaintiff, *knowing* that he had not bought the wagon, uses legal process *maliciously*, for the mere purpose of coercing a party to an agreement which otherwise could not have his consent, such contract is without force. The law strips a party thus abusing its process, of all protection under it, and leaves him to answer for his sins as a naked wrong-doer. There may be reason to think that Thompson was easily coerced, and that a man of ordinary nerve and stability would not have consented to a contract against his will, and to his prejudice, under these circumstances ; but the jury have found under proper instructions, as we think, that a man of ordinary sagacity and firmness would have succumbed. We find no error in law in this part of the case.

II. The plaintiff requested the court to charge, that this defence would not avail the defendant, unless the defendant had offered to rescind the contract by an exchange of the notes. The contract of purchase now in question, was effected on the 19th of December, and on the next day defendant notified the plaintiff that the wagon would not be surrendered, and that Thompson repudiated the pretended purchase of the wagon on the 19th, and on the same day plaintiff demanded the wagon, and relies solely on that demand as evidence of the conversion. There is no evidence that Thompson has made the $100 note his own, by any attempt to collect or negotiate it : his notice to the plaintiff was, in effect, that he repudiated all but $75.00 of the plaintiff's note, and was ready to exchange it for the $75.00 note in plaintiff's

32

hands ; and the case does not disclose but that Thompson has ever been ready to do this.   The plaintiff took the initiative, and based his suit on the fact that defendant, by the refusal to deliver the wagon on the 20th December, had converted it tortiously ; and the question thus raised is, whether the plaintiff was owner of the wagon at the time of the demand.   The plaintiff had notice that Thompson repudiated the pretended sale ; and the jury have found that the sale was invalid, and the repudiation rightful. If Thompson had refused to exchange the notes, he would have affirmed the sale.   But he is not in the wrong (being willing, at all times, to exchange the notes,) in holding the $100 note until the plaintiff shall deliver his note for $75 to Thompson, in lieu of the larger note in his hands.   The duty of Thompson to surrender the $100 note to the plaintiff is not *absolute,* but *conditional.*

We think that the plaintiff, on the facts found by the jury, was not such absolute owner of the wagon, that withholding possession was a tortious conversion of the property.   And there is no fact stated in the exceptions whereby Thompson has affirmed the sale of the wagon.   *Watkins* v. *Baird,* 6 Mass. 506 ; *Hodgden* v. *Hubbard,* 18 Vt. 507 ; *Foshay* v. *Ferguson,* 6 Hill, 157.

Judgment affirmed.