## Henry M. Snyder v. Lewis Willey.

*Bills of exceptions: Notes of the whole trial.* The practice of incorporating into a bill of exceptions the notes of the trial literally, without reference to whether they have any bearing on the law questions raised, is criticised.

*Assignment of errors: Exceptions.* An assignment of error, not supported by any exception, will not prevail.

*Assumpsit: General issue: Evidence.* Defenses to an action of assumpsit, going to the existence of any promise having legal force, are admissible under the general issue.

*Evidence: Promissory notes: Illegal consideration: Fraud: Extortion.* Where the defense is made to a suit upon a promissory note, that it was given in compromise of a criminal complaint against the maker's son-in-law and was procured through the entreaties of the daughter, whose fears had been played upon by the plaintiff with that purpose, it is competent to show what she stated to her father to induce him to give the note, as this was a part of the *res gestæ.*

*Evidence: Objections.* An objection to the inquiry put to defendant as a witness by his own counsel, as to what, if any thing, induced him to sign the note in suit, no ground of objection being given, is held not well taken, the inquiry being under the circumstances of no importance.

*Evidence: Immaterial inquiries.* The exclusion of evidence in relation to previous dealings between plaintiff and defendant's son-in-law, not connected with the transactions out of which the consideration for the note in suit was claimed on the one side to have grown, nor with the criminal prosecution, to compromise which the other side asserted the note was given, is held not to be error.

*Assignment of errors: Record.* Allegations of error which the record as returned does not support, will not prevail.

*Evidence: Motives: Facts.* The exclusion of the inquiry, put to the plaintiff as a witness by his own counsel, whether the settlement in which he received the note in suit, was made with a view on his part of compounding any felony or settling any criminal offense, or only for the purpose of securing his just debt, is held, under the circumstances of this case, all the surrounding facts having been proved, not to be error.

SNYDER *v.* WILLEY.

*Promissory notes: Consideration: Suppression of criminal proceedings.* A promissory note given in consideration of the suppression of proceedings under a criminal complaint, is void in the hands of the promisee who was a party to the illegality, and he cannot enforce collection of it.

*Contracts: Illegality of consideration: Complete defense: Restitution.* Illegality of consideration is a complete defense to the entire contract, though the consideration be in part valid; and it is admitted as a defense, not to benefit the defendant, but to protect courts of justice from being made instruments to compel the execution of a contrivance to violate the law; nor will it be made a condition that restitution be made to the plaintiff of that part of the consideration which is legal; but the law leaves the parties where by their willful violation of it they have voluntarily placed themselves.

*Submitted on briefs January 20.    Decided April 11.*

Error to Ionia Circuit.

*Vosper & Wilson,* for plaintiff in error.

*Mitchel & Pratt,* for defendant in error, cited: *Inhab.,* etc., *v. Eaton, 11 Mass., 375; Moore v. Adams, 8 Ohio, 372; Pepper v. Haight, 20 Barb., 429; Foote v. Emerson, 10 Vt., 344; Browing v. Morris, Cowp., 790; Fay v. Oatley, 6 Wis., 42; Keir v. Leenan, 9 A. & E., N. S., 371; Seiber v. Price, 26 Mich, 579; Hacket v. King, 6 Allen, 58; Osburn v. Robbins, 36 N. Y., 371; Roll v. Raguet, 4 Ohio, 400; Moore v. Adams, 8 Ohio, 372.*

GRAVES, J:

Willey and his son-in-law, one Warner, made their joint and several promissory note to Snyder for two thousand dollars, and payment being refused when it matured, Snyder brought this suit against Willey upon it.    Willey defended, and the essence of his defense was, that a material part of the consideration was the stifling of two criminal prosecutions (of which one was for forgery), commenced at Snyder's instance, and then pending against Warner. The jury returned a general verdict for Willey, and likewise returned answers to a large number of special questions. Judgment being entered against Snyder, he brought error, and the

case is before us on a voluminous bill of exceptions, which has been fully inspected. It is seriously objectionable on account of its length and method. There are about two hundred folios of testimony, when all that was in the least needful might have been set down in less than fifty. An unreasonable expense was thus caused, and the labor of review largely enhanced. It would appear that notes of the trial were literally incorporated, without reference to their needfulness for the purpose of decision here, and as evidence of the want of care shown in drawing up the bill, we observe that at the foot of the testimony it is stated that "this was all the testimony given in the case," whereas it appears, but a few folios back, that the plaintiff, in answer to explicit questions by defendant's counsel, testified that he heard Mr. Marble testify in the cause the day before, and yet no such' testimony, or any testimony of Mr. Marble, appears in the bill. We have had frequent occasion to express our disapproval of similar improprieties in practice. It is not alone that they increase the labor of the court; they unduly magnify the expense, and obscure and mystify the case, and make way for misapprehensions and injustice. It may possibly become necessary to apply some sort of penalty in order to repress such prejudicial irregularities.

It seems proper, in the first place, to gather from the record the material points in dispute. This is the more important because there is considerable matter not able to affect the result, and some which has a more incidental bearing.

That the paper sued on was given by defendant to plaintiff, was not questioned. The objection was, that it never had any validity; and in substance the theory of the defense was, that Warner had pledged to Snyder a quantity of small notes, having a face value of some two thousand four hundred or two thousand five hundred dollars, on which Snyder had advanced some five hundred or six hundred dollars; that in these circumstances Snyder made a criminal complaint against Warner, and charged him with

having forged one of these notes, and caused him to be
arrested for examination on the complaint; that Snyder
then proceeded to practice on the fears of Warner, Willey
and Willey's daughter, Mrs. Warner, and made threats to
her to cause her to solicit and influence her father, the
defendant, to step forward and become a party to a settle-
ment on exorbitant terms prescribed by Snyder; that defend-
ant, being moved by such arts and. means, met Snyder and
received and offered terms of settlement; that Snyder's
demands were considered too extravagant, and the parties
separated without agreeing; that Warner was then placed
in jail under the warrant on Snyder's complaint, and was
bailed out in a day or two by defendant's means; that
Snyder then made a second and different charge against
Warner on another of the notes, and caused a warrant for
his apprehension to be placed in the hands of the sheriff,
and still signified his purpose to push his advantage and
pursue Warner to the penitentiary unless a satisfactory set-
tlement should be made; that whilst this warrant was out,
and before arrest under it, a general adjustment was agreed
upon and in the main carried out; that one branch of it
was, that Warner and his father should give their note to
Snyder without defendant's knowledge for about two hundred
and ninety-four dollars, which was done; that the other
branch of it was, that Snyder should telegraph the sheriff
to abstain from coming and arresting Warner on the second
complaint; that he should surrender the notes he held and
stop the criminal proceedings; that they should stand settled;
and that Warner and defendant should give the note in
suit upon such consideration; that Snyder telegraphed, or
was understood to have telegraphed the sheriff as agreed;
that he surrendered the notes, and that Warner and defend-
ant gave the note in accordance with the understanding;
that shortly afterwards the sheriff appeared and made the
arrest on the second complaint, but that in fact the pro-
ceedings in both cases were stopped, the plaintiff refusing
to appear, and paying the costs; that the note for about

two hundred and ninety-four dollars was subsequently paid; that it was expressly understood when the note in suit was given that it was to settle the whole matter, including the criminal proceedings.

The evidence in favor of this theory was very strong.

The plaintiff's position was not essentially different except in two particulars.

*First,* He insisted that the small notes surrendered amounted, according to their face value, to two thousand four hundred and fourteen dollars and some odd cents; that they were not pledged to him, but were entirely his by purchase from time to time of Warner, and that he gave Warner about eighty cents on the dollar for them, partly in cash and partly in notes he held against Warner.

*Second,* That in settling and getting the note from Warner and his father and the note in suit, the criminal matters were not taken into account, and that nothing beyond his civil claim was embraced.

In testifying he admitted he instituted the criminal proceedings, and claimed that the note about which he first complained was a forgery, and at the same time admitted that this very note, and that also on which he based his second complaint, were amongst those he surrendered. He likewise admitted that this surrender of the notes, and the settlement which embraced such surrender, and also embraced the giving the note in suit, actually occurred whilst the criminal proceedings were pending, and that at the very time of making the settlement he telegraphed the sheriff not to come and make arrest on the second complaint. He further testified that shortly after Warner's arrest on the first complaint he met him at Somer's store, and that Warner told him he wanted it fixed up, that he did not want to go to Ionia, and that he (Snyder) replied, "If you want to fix it up, we can do so;" that an interview then occurred between plaintiff and defendant, and that defendant made two propositions to settle, one being that he would take the notes if he (Snyder) would throw off ten per cent., and that he

(Snyder) declined each proposition; that shortly afterwards, and after Warner had been bailed out of jail, he (Snyder) met him on the sidewalk and said to him: "I was kind of sorry that I did not make the old man another offer after I came home; I was sorry I did not offer to split the difference and throw off five per cent. and settle the thing up," and that Warner replied: "We will do it; I will go over and see the old man and fix it up;" that after the second warrant was out, Warner told him he would "fix that thing up in some way," and thereupon the final interview was at once brought about at which the business was concluded; that previous to this, however, he (Snyder) informed the prosecuting attorney "that Warner wanted to settle it up," and that this officer instructed him "not to give any writings to settle a criminal process," but that he might do so in civil matters, and that he gave no writings at all.   He testified further, that on the settlement he told Willey "he would not appear on the return day" against Warner, "and dropped it," and that it was dropped; that there was from first to last much controversy about terms; that Warner was to pay the costs incurred in the criminal proceedings, but failing to do so, he (Snyder) had to pay them.

He did not deny having made threats as to what he would do against Warner if no satisfactory adjustment was reached, and reluctantly admitted he meditated sending him to the state prison unless a settlement was obtained.

With this explanation we proceed to consider the assignments of error, and we may first examine those relating to rulings on evidence.   It is first assigned for error that the court erred in admitting Warner to testify in regard to transactions between him and plaintiff which were prior to the making of the note in suit, for the reason that the plea did not authorize it.

It is a sufficient answer to say that no exception was taken.   But if there had been it would have been without force.   The matter referred to was simply introductory, and

the basis of the objection as explained at the time, that the notice accompanying the plea alluded to no former transactions or to the borrowing of any money, was fallacious. The defense was directed to the very existence of a promise having legal force, and this was admissible under the general issue alone.—*Gould's Plead.*, *ch. 6, pt. 1, § 47.* In an anonymous case in *6 Mod., 230,* the court say a *feme covert* may plead non-assumpsit and give the coverture in evidence "because coverture makes it no promise." And our own cases are decisive to show that the defense was admissible under the general issue prescribed by statute.—*Kinnie v. Owen, 1 Mich., 249; Agent of State Prison v. Lathrop, Ib., 438; Myers v. Carr, 12 Mich., 63; Taff v. Hosmer, 14 Mich., 309; Dean v. Chapin, 22 Mich., 275; Wilson v. Wagar, 26 Mich., 452; Young v. Stephens, 9 Mich., 500.*

The second assignment charges error in allowing Warner's wife to state the conversation between herself and her father, the defendant, at his house.

This assignment is not warranted by the record. She was expressly confined to what she said to her father, and conversations "between" her and her father were excluded. She was only allowed to state what she told him to induce him to act, and it was manifestly adduced as one of the pieces of evidence to sustain defendant's theory, that the plaintiff made use of means to excite and frighten the daughter and cause her to influence her father, the defendant, to step forward and save the husband and son-in-law, Warner, from the plaintiff's toils.

She had just testified that immediately before going to her father the plaintiff had told her that the best thing her husband could do would be to settle, and that he, the plaintiff, would send her husband to Jackson unless he did settle, and that he had then got a second warrant for him. Under these circumstances what she told her father, to incline him to act, was part of the transaction. Its admission was not improper.—*1 Green. Ev., 108; 1 Stark. (by Shars.), 79, et seq.; Goodwin v. Harrison, 1 Root, 80; Phelps v. Foot,*

33 MICH.—62.

*1 Conn., 387; Park v. Hopkins, 2 Bail., 408; Hadley. v. Carter, 8 N. H., 40.*

The third assignment alleges error in permitting defendant's counsel to ask him what, if any thing, induced him to sign the note.

The defendant answered that his inducement was to get his son-in-law clear from that position; that he had no other object in view, and never received a dollar. On making objection to the question, no ground or reason was given, and none has been intimated here. Considering the tenor of the testimony on both sides, and even that given by the plaintiff, the inquiry would seem to have been of no importance, and as counsel have omitted to hint at any basis or theory to maintain the exception, it is believed to lack merit.

The fourth and fifth assignments are so plainly without force as not to deserve notice. The sixth complains because Warner was allowed to testify concerning the giving of the note by himself and father for two hundred and ninety dollars or two hundred and ninety-four dollars. There is nothing in this point. This subject was a branch of the defense. It was one of the marked features of the complete transaction, and without proof of it the jury could not have seen the transaction as it was.

The seventh allegation of error charges that it was improper to stay Hunt, a witness for plaintiff, from testifying that as plaintiff's agent he had bought notes of Warner during the time plaintiff and Warner were dealing together, inasmuch as the court had allowed defendant to place before the jury his view of such transactions and dealings. The allegation of error is not quite in keeping with the record, and does not fairly represent the action of the court. The exact extent of the ruling was to preclude Hunt from testifying in regard to other notes than those connected with the transaction. He was not prevented from swearing that he bought for plaintiff any or all of the notes in question, or from stating any thing he knew about Snyder's buying them, and

in fact he testified at some length on this subject, and to the effect that the notes were bought and not pledged. When the point was raised below by plaintiff's counsel on which this charge of error is based, it was expressly stated there was no purpose to show by the witness that he bought any of the notes in question. If Hunt, acting as plaintiff's agent, had previously bought other notes of Warner, it had no tendency by itself to show that the notes connected with the transaction were also bought, and there was no offer of proof that Warner in such dealing with Hunt made any statement or admission leading, or helping to lead to any inference that the two dealings were similar. But the issue made in evidence, as to whether the notes connected with the transaction were pledged or sold to plaintiff, was immaterial, except as the event of it might bear on the credit of witnesses, and on the probability that there was or was not a reasonably adequate consideration in the view of the parties for the papers given to the plaintiff on the settlement, without including the suppression of the criminal proceedings. As the case stood, and in view of the facts sworn to by the plaintiff himself, it would be going very far to say that the remote influence just mentioned could have been produced through the testimony called for from Hunt. But however this may be, and waiving the fact that the allegation of error does not truly apply to the record, and departs from the requirement of the rule, the ruling itself under the circumstances was not illegal.—*1 Green. Ev.*, § *448; 2 Ev. Poth., 283; Com. v. Jeffries, 7 Allen, 548; People v. Kennedy, 32 N. Y., 141.*

The eighth allegation charges that the court erred in striking out testimony given by the plaintiff on his redirect examination in relation to his good faith and intentions in making complaint before the justice. In the first place it does not appear that there was any thing of the kind in connection with the redirect examination. But at any rate the plaintiff was allowed full liberty to testify as to his good faith and intention in making complaint, and he actually

testified at length on the subject.    There is no foundation for the assignment.

The ninth charge of error complains that the court improperly overruled the following question put to the plaintiff: "In settling with Mr. Warner and Mr. Willey did you make that settlement with a view of compounding any felonies or settling any criminal offense, or was it for the purpose of securing your just debt?"

An allowance of this question would not, except on account of its leading character, have been illegal, but it is a very different matter whether its rejection can be made a ground of complaint.    On its face it was a little ambiguous, because the plaintiff may very well have had an ultimate purpose quite apart and remote from the relief of Warner from his peril of criminal prosecution.

The plaintiff had just previously testified to his talk with both Warner and Willey in regard to settling, as already mentioned, to the circumstances of the settlement, to his interference to prevent the service of the second warrant, and that in making complaints and suing out the warrants he acted in perfect good faith.    He had also been asked by his counsel, whether in settling he was "settling a criminal prosecution or settling for these notes," and in answer to the question had sworn that he "was settling for these notes."    And immediately after the excluded inquiry he swore, after hesitation, that when the warrants were procured he meant to send Warner to state prison unless he settled, and that he informed Willey at the time of the settlement that he "would not appear against" Warner "at the return day," and "dropped it."

Viewing the course of his examination, and his way of answering, and the answers given, there was strong reason for expecting that in responding to a question shaped as this was he would return an equivocal answer, an answer reflecting his notion of his final purpose in the transaction, as distinguished from his purpose or intention touching the means to bring about his final purpose.    The question was

not so framed as to confine him to his purpose or intention in the latter sense, and it was not important to press an examination in respect to the other.

One may resolve that he will get money from another, and such determination may imply nothing wrong. The end may be all right, or at all events not unlawful, and in a certain sense the separate fact of getting the money may be said to be the purpose or intention of the person resolving to get it. But the choice of means may carry with it an intention to rob or do some other illegal thing, and the important inquiry concerning purpose or intention, where the ultimate object is not necessarily wrong, relates to the purpose and intention connected with the means contemplated or adopted.

After a critical examination of the evidence, and especially the testimony given by the plaintiff himself, it is not perceived that the ruling objected to affords him any ground of legal complaint. In point of fact, he did testify in relation to the very subject to which the inquiry pointed, unless we assume the question was framed artfully and so that the witness would catch in it an opportunity to return a misleading reply.

The rulings about admitting evidence being disposed of, the charges of error based on instructions and refusals remain to be noticed, and this branch of the case is not entitled to much discussion. Considering the plainness of the evidence, the physiognomy of the defense developed, the form and inaptness of the requests refused, and the tenor and bearing of the instructions given, it would be a waste of time, in view of the findings by the jury, to examine the exceptions in this part of the case in detail.

The plaintiff has no just cause for complaint, since if the instructions were in any respect objectionable, they were at least sufficiently favorable to him, and the requests refused were either defective in frame or inapposite. The substantial and main defense, as developed by the trial, was, that part of the consideration of the note was the suppression of the

criminal prosecutions against Warner, of which one was for forgery, and the evidence given by the plaintiff would have warranted a finding that this defense was true.     But defendant urged as further matter of defense, that Snyder caused the commencement of such proceedings and the arrest of Warner for the very end and purpose of procuring, through their pressure and influence, a private pecuniary gain or advantage, and that the obtainment of the note was within such scheme and intention.

In view of the evidence and instructions, the general verdict must have been construed as a finding in favor of one or both of these grounds of defense, and in any event must therefore have been decisive.

Still there would have been nothing to enable the court to say whether the jury found for the defendant on both grounds, or, if not, upon which one of the two.

The answers by the jury to particular questions have, however, removed all uncertainty on this subject. They are in perfect harmony with the general verdict; and not only so, but they distinctly negative specific positions of the plaintiff, and categorically affirm the essential elements of both grounds of defense.

They say the plaintiff did not buy the small notes of Warner; that the prosecuting attorney did not assume control of the criminal proceedings, but did direct their discontinuance; that he did not inform plaintiff that he might settle his private damages, or to that effect; that the note in suit was given by defendant in consideration that plaintiff would surrender to Warner the small notes and forbear to prosecute the criminal proceedings; that plaintiff procured the warrants to be issued to obtain pecuniary satisfaction or some advantage to himself, and that these prosecutions were used by him to procure defendant's signature to the note in suit, and that the stopping the criminal prosecutions was understood as entering into or forming part of the consideration, or as inducement to the execution of the note.

The findings settled beyond all question, that the writing sued on was based in part on an illegal consideration, and hence was not enforceable by the promisee, who was party to such illegality. Among the multitude of cases bearing on illegal arrangements, we cite the following, and they are quite sufficient for the present purpose.—*Collins v. Blantern, 2 Wils., 341,* and *2 Smith L. C., 153, and note; Holman v. Johnson, Cowper, 341; Benyon v. Nettlefold, 2 E. L. & E., 113; Hall v. Dyson, 10 E. L. & E., 424; Pearce v. Brooks, L. R., 1 Exch., 213; Ayerst v. Jenkins, L. R., 16 Eq., 275; 6 Eng., 756; Armstrong v. Toler, 11 Wheat., 258; Hanauer v. Doane, 12 Wall., 342; Trist v. Child, 21 Wall., 441; Orr v. Lacey, 2 Doug., 230; O'Hara v. Carpenter, 23 Mich., 410; Briggs v. Withey, 24 Mich., 136; Seiber v. Price, 26 Mich., 518; Steuben County Bank v. Mathewson, 5 Hill, 249; Sherman v. Barnard, 19 Barb., 291; Rose v. Truax, 21 Barb., 361; Peck v. Burr, 10 N. Y., 294; Knowlton v. The Congress and Empire Spring Co., 57 N. Y., 518; Atwood v. Fisk, 101 Mass., 363; Taylor v. Jaques, 106 Mass., 291; Clapp v. Hale, 112 Mass., 368; Sturges v. Bush, 5 Day, 452; Treat v. Jones, 28 Conn., 334; Shaw v. Spooner, 9 N. H., 197; Clark v. Ricker, 14 N. H., 44; Carleton v. Bailey, 7 Foster, 230; Roll v. Raguet, 4 Ohio, 400; Widoe v. Webb, 20 Ohio St., 431; Bush v. Brown, 49 Ind., 573;* see also § *7672, C. L.*

An argument of much length is submitted in the brief of plaintiff's counsel, to the effect that as part of the consideration for the defendant's promise sought to be enforced was the surrender of the small notes to Warner, it was not competent to bring forward the defense that the rest of the consideration was illegal, without its being shown that the small notes had been returned or offered back, and the argument seems to proceed on the assumption that the defense of illegality supposes or requires a rescission of the unlawful engagement by the party defending; and that his retention of the lawful part of the consideration must

be considered as conclusive evidence of an election not to rescind, and hence an election to abide by the engagement.

The authorities cited expose the fallacy of this position, if indeed any authority was needed.

The plaintiff voluntarily became a party to an illegal agreement, and accepted a promise the consideration for which was in part this very illegality.

He chose to become promisee of the defendant where the consideration for the promise was the stifling of a criminal prosecution and the surrender of notes. He gave up the notes at once, and seems to have been faithful to his unlawful agreement concerning the prosecution. The defendant's promise has remained unexecuted, and the plaintiff now asks the court to compel him to perform, and insists that the court must do so, inasmuch as the defendant keeps the legal part of the consideration. The point is, that the law must help the plaintiff out of the consequences of his illegal conduct, and save him from loss, in one way or another. It must either award him the amount of the note, or by a rule of proceeding at least bring back to him all of any value he chose to part with to obtain the note.

The defendant might have voluntarily kept his promise, and if he had the whole arrangement would have been executed on both sides. But the transaction was never enforcible by action. The instrument the plaintiff accepted was in form a promissory note, but in the eye of the law it never had any legal force.

Being tainted by the illegal consideration, its fitness and capacity to be enforced depended on no other contingency than proof regularly made of the vice in it.

The defense in question is not admitted in order to benefit the defendant, but to protect a tribunal established to uphold the law from being made an instrument to compel execution of a contrivance to violate the law.

The very nature of the defense negatives the existence of any thing to be rescinded, and hence the entertaining of it depends in no manner upon any supposed duty resting on

one of the culpable parties to restore any thing to the other, and the court can never recognize any rule by which the plaintiff must either have an enforcement of the promise made to him or else be put back where he was before he acted in furtherance of his illegal agreement.—*Brownell v. Talcott, 47 Vt., 243.*

The judgment should be affirmed, with costs.

The other Justices concurred.