## FRANK B. BRADLEY
### v.
### CATHERINE IRISH.

*Mortgages—Bill to Set Aside—Notes—Cancellation of—Fraud and Duress—Arrest of Grandson.*

Upon a bill brought to set aside a certain mortgage, and to cancel notes secured thereby, upon the ground that said notes had been extorted from their maker through fraud and duress accomplished by, and in connection with a criminal process issued from a justice court, this court declines to interfere with a decree declaring, among other things, said mortgage to be null and void, and directing that the same be set aside as a cloud on the title of complainant, and that the defendant be perpetually enjoined from attempting to enforce the same.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Peoria County; the Hon. T. M. SHAW, Judge, presiding.

Messrs. SHEEN & LOVETT, for appellant.

Messrs. PUTERBAUGH & PUTERBAUGH, for appellee.

LACEY, P. J. This was a bill in equity brought by the

appellee against the appellant to set aside a certain mortgage on her homestead consisting of lot 9 in range 4, Mills' addition to Peoria, Illinois, given by her to appellant December 10, 1887. Also to cancel three promissory notes given by appellee, secured by the said mortgage, bearing date the same date thereof, due in one, two and three years, two being for $400 each and one for $300, all at seven per cent interest. The ground for the relief asked was, that the notes had been extorted from her through fraud and duress accomplished by, and in connection with, a criminal process issued from a justice of the peace court. It seems from the bill and evidence that one John Londergan, the grandson of appellee (who was an old lady about sixty-five years of age), and who made his home with her at the time, was in the employment of appellant, who was a merchant tailor in the city of Peoria, in the capacity of a clerk, and was charged about the date of the mortgage with having committed the crimes of embezzlement and forgery whereby appellant claimed to have been defrauded of about $1,100. That the appellant conceived a scheme to force Londergan to procure his grandmother, the appellee, to secure the said claim by forcing her to give a mortgage on her homestead, which was already mortgaged to secure said debt. In pursuance of such scheme he procured a warrant to be issued from before Barrett White, a justice of the peace in the city of Peoria, for the arrest of the said Londergan on the charge of embezzlement. This warrant was taken by appellant and put in the hands of the deputy sheriff, James T. Wasson, and procured him to pretend to arrest Londergan and ordered him to hold him until he got the matter straightened up, saying to the deputy sheriff: "Jim, I wish you would keep him or look after him until he gets this thing straightened up," and the same time giving the deputy sheriff the warrant. The deputy sheriff afterward took Londergan in charge without reading or serving the warrant on him but giving him to understand he had it, and that he (Londergan) was in custody. Then the appellant and the deputy sheriff with Londergan in custody, went over to Mrs. Irish's house and revealed the state of facts to her and the aunts of Londergan, and by threats of

Bradley v. Irish.

putting Londergan in the penitentiary and showing her that he was then under arrest, knowing her great affection for her grandson, compelled her against her will and by means of this pressure to execute the notes and mortgage in question. This, in short, is about the true statement of the case. Much evidence was given in before the master, and he made a finding in the case which was reported to the court and upon which the court rendered the decree. The master found as follows: "That the procuring of the warrant and the arrest of Londergan by Bradley were for the sole purpose of collecting said indebtedness, and to compel the complainant to execute and deliver notes and mortgage to secure the same. That complainant believed Londergan was arrested on the said warrant and was about to be imprisoned, and signed the same through fear and delivered the same under duress and not of her own free will, was fully justified by the evidence. It may be further stated that no arrest was ever entered on the warrant, and it was never returned to the justice of the peace who issued it." We think this finding by the master was fully borne out by the evidence. The question then is, whether, this being the case, the giving of the notes and the mortgage can be sustained. The master's report was approved by the court and the mortgage in controversy declared null and void and set aside as a cloud on the title of complainant; that the defendant deliver up the same to the clerk of the court to be canceled, etc., and the defendant be perpetually enjoined from attempting to enforce said mortgage; that the injunction heretofore issued be dissolved as to the promissory notes mentioned in the mortgage and the appellant pay the costs of the suit; the notes having been assigned by appellant to the First National Bank *bona fide*, without notice of any defense and for a valuable consideration.

This being the state of the evidence in the case there seems no question but that the court acted properly in rendering the decree it did. To uphold the mortgage under the circumstances would be to sanction a proceeding that shocks the sense of justice and right of all right thinking men, and would violate all the cherished principles of a court of equity. The debt for which appellee mortgaged her home-

stead was not her own, but that of a grandson and adopted child, for whom she had a greater affection, as the evidence shows, than any of her own children. Such a scheme as this to coerce her to sign the mortgage under such fraudulent use of the criminal process is shocking in the extreme. It has too much the appearance of robbing the grave to pay the debts of the deceased relatives. The fact that this old lady would mortgage her homestead and thereby turn herself out into the street, is proof enough that this criminal device succeeded but too well, and only shows the overwhelming pressure that was brought to bear upon her.

There is abundant authority holding such a transaction voidable. Strong v. Graham, 26 Barb. 122; Richardson v. Duncan, 3 N. H. 508; Watkins v. Baird, 6 Mass. 511; Severance v. Kimball, 8 N. H. 386; Schommer v. Farwell, 56 Ill. 545; Bane v. Detrick, 52 Ill. 20.

The decree of the court below is therefore affirmed.

*Decree affirmed.*