# Fountain *v.* Bigham, Appellant.

*Criminal law—Compounding of felony—Act of March 31, 1860, P. L. 382—Bond—Duress.*

1. In an action upon a bond where the defense is that the bond was signed by the surety to prevent her son-in-law from being prosecuted for forgery, the burden is upon the defendant to show that the plaintiff committed the offense of compounding a felony. In such a case the essential ingredients of the crime set up as a defense to the bond, are (1) that a forgery was committed, (2) that the obligee in the bond had knowledge of the actual commission of the offense at the time he took the bond, and (3) that in consideration of being given the bond to secure its indebtedness he agreed "to compound or conceal the crime."

2. Under the Act of March 31, 1860, P. L. 382, it is "a knowledge of the actual commission of any forgery," and not a knowledge of the party who committed the forgery, that is the essential element of the offense.

3. Where compounding of felony is set up as a defense in an action on a bond, it is only necessary for the defendant to establish the commission of the offense by a preponderance of testimony. In such a case a threat to prosecute the principal in the bond is in itself evidence for the jury of the plaintiff's knowledge that the principal had committed the forgery charged.

*Contracts—Duress—Invalidity of contract.*

4. A contract obtained by duress or acts of coercion or intimidation may be invalidated. Under such circumstances the party coerced is not exercising his free will, but executing the will of the party who subjects him to the coercion, and, therefore, the instrument bearing his signature is not the contract of the party against whom it is sought to be enforced. The test is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed,— the fear which made it impossible for him to exercise his own free will.

5. The threat must be of such a nature and made under such circumstances as to constitute a reasonable and adequate cause to control the will of the threatened person, and must have that effect, and the act sought to be avoided must be performed by such person while in such condition.

6. A threat of lawful imprisonment is not duress, unless it is made for an unlawful purpose, such for instance, as compelling

the satisfaction of a debt by payment in money, or by the execu-
tion of an obligation to secure it.

7. The defense of duress is open only to the party upon whom it
is imposed, and a third party who has become surety for the pay-
ment of the claim cannot avail himself of the plea unless he signed
the obligation without knowledge of the duress; but there are
certain exceptions to the rule, among which is the case of a
mother-in-law becoming surety for a son-in-law, where the latter
is living amicably with his wife, and the two families are on the
usual terms of intimacy and friendship.

8. In such a case it is for the jury to determine whether the
bond given by the mother-in-law was her voluntary act, or was
executed under threats of prosecution of her son-in-law which
deprived her of the exercise of her free will.

9. If the threats were made, although not in her presence, but
with the intention that they should be communicated by others to
her, for the purpose of coercing her in signing the bonds, it is com-
petent to show the threats, that they were communicated to her,
and what, if any, effect they had in inducing her to sign the bond.

Argued March 23, 1911. Appeal, No. 61, Jan. T.,
1911, by defendant from judgment of C. P. No. 5, Phila.
Co., June T., 1906, No. 5361, on verdict for plaintiff in
case of Nathaniel L. Fountain v. Margaret A. Bigham.
Before BROWN, MESTREZAT, POTTER, ELKIN and
STEWART, JJ. Reversed.

Assumpsit on a bond. Before MARTIN, P. J.

The facts are stated in the opinion of the Supreme
Court.

At the trial, plaintiff was asked this question:

"Q. Was it because you got the bond for security for
your money that you did not prosecute him for
forgery?"

Objected to.

Objection sustained.

Exception. [1]

"Q. In your negotiations with A. J. Dunn prior to
the signing of this bond did you agree with him that if
a bond were given as security for the payment of your
money that you would drop the false pretense charge

you then had against him and would not bring against him a charge of forgery which you then and there did?"

Objected to.

Objection sustained.

Exception. [2]

Defendant made this offer:

"Mr. Owens: We will show that this conversation was communicated with Mrs. Bigham. I offer this testimony for the purpose of showing that these threats communicated to this witness were part of a system of threats and coercion brought to bear upon different members of the families of both defendants for the purpose of inducing the signing of this bond. These threats were all communicated to the parties who made the bond.

"The Court: Were these communications made by the plaintiff?

"Mr. Owens: Not direct but the parties to whom they were made communicated them directly."

Objected to.

Objection sustained.

Exception. [3]

"Mr. Owens: I further offer to prove by this witness that the threats made against A. J. Dunn by Fountain were communicated to her and were the inducing cause of her signing this bond, and was the only consideration therefor.

"Mr. Laws: I object for the reason that it is incompetent, irrelevant and not evidence in this case."

Objection sustained.

Exception. [4]

The Court charged in part as follows:

"Therefore if there was forgery committed by **Dunn**, and Mr. Fountain knew that forgery had been committed, and had evidence to prove it, but in consideration of this bond being given refrained from prosecuting Dunn for forgery, then the bond is void, and your verdict should be for defendant.

"Does the evidence satisfy you that he was in pos-session of evidence to prove such a case? Put your-self in his position. He finds a check drawn to his order, endorsed with his name not written by him; underneath this is the name "A. J. Dunn" and the check bears evidence of having passed through Dunn's bank account. In the Criminal Court, a defendant cannot be compelled to testify against himself, and if Dunn was called to the stand to explain how Foun-tain's signature was placed on the back of the check he could decline to incriminate himself. How could Fountain establish a case of forgery? His name ap-pears on the check; he swore he did not sign it. Below is the name of Dunn who received the money. If that should be held to establish a prima facie case sufficient to call upon Dunn to defend, if he denied that he signed the name of Fountain on the check that would probably end further inquiry from him, and if ac-quitted suit might follow claiming damages from Foun-tain for false arrest. It is not enough that it now, for the first time, has been learned by Fountain that Dunn caused some one to sign the name of Fountain, and that his conduct may have subjected him to a charge of forgery. If you are satisfied that the only crime of which Mr. Fountain was aware when the bond was executed was that of false pretense, he had a right to accept the bond and agree to the settlement of the case."

"Mr. Fountain seems to have left the matter in the hands of his lawyer, and testified that he was willing to do anything the law would allow him to do. Mr. Dunn swore that it was the distinct understanding that all the charges were to be withdrawn. Mr. Bley, who acted for Mr. Fountain, denied all knowledge of such a stipulation, and testified that all they under-took to do if the bond was signed, was when the case came up for trial to state in Court that Fountain had received the bond and endeavor if possible to have Dunn acquitted. Does the subsequent conduct of the

parties support the evidence of Dunn, that the criminal proceedings were to be withdrawn? Dunn paid interest on this bond several times. The case was on the list for trial several times, at none of which does it appear that demand was made that it should be submitted; and finally it was tried and resulted in the acquittal of Dunn. You have heard the testimony relating to these defenses; that there were threats made to Mrs. Bigham calculated to operate upon the mind of a person of ordinary firmness and inspire her with great fear, and to avoid the disgrace she was induced to do that which she would not otherwise have done— sign the bond; that the bond was given as part of an agreement to suppress the crime of forgery; and that there was a failure of the consideration for the bond by reason of the fact that the criminal prosecution which had been commenced was not withdrawn, but allowed to proceed to trial."

Plaintiff presented these points:

"1. There is no sufficient evidence in this case to set aside the judgment as to Margaret A. Bigham upon the ground that she was induced by threats, coercion or intimidation to sign the bond upon which the judgment was entered."

*Answer:* "So much of the point is affirmed. The balance is refused." [18]

"2. Margaret A. Bigham cannot set aside the judgment entered in this case upon the ground that Alphonsus J. Dunn was induced to sign the bond by threats, coercion or intimidation, because under the evidence she had knowledge of the alleged threats, coercion or intimidation before she signed the bond."

*Answer:* "That I affirm." [19]

Verdict and judgment for plaintiff for $2,500. Defendant appealed.

*Errors assigned* amongst others were (1, 4) rulings

on evidence quoting the bill of exceptions; (16, 18, 19)
above instructions quoting them.

*Bernard F. Owens,* with him *Joseph Levy,* for appel-
lant.—The courts have uniformly held that all bonds,
contracts and agreements, the consideration of which
is the stifling of a charge of forgery, are void and unen-
forceable in law: National Bank v. Kirk, 90 Pa. 49;
Bredin's Appeal, 92 Pa. 241; Riddle v. Hall, 99 Pa. 116;
Filson v. Himes, 5 Pa. 452; Pearce v. Wilson, 111 Pa.
14; Swope v. Ins. Co., 93 Pa. 251; Conderman v.
Trenchard, 40 Howard Prac. (N. Y.) 71.

Fountain used a criminal prosecution to enforce pay-
ment of a civil debt: Fillman v. Ryon, 168 Pa. 484;
Portner v. Kirschner, 169 Pa. 472; Baker v. Morton, 79
U. S. 150.

The bond was executed under the influence of threats
and coercion.

*F. S. Laws* of *Lewis, Adler & Laws,* for appellee.—
The evidence as to threats was not admissible: Green-
field's Estate, 14 Pa. 489; East Stroudsburg Nat. Bank
v. Seiple, 29 Pa. C. C. R. 245; Griffith v. Sitgreaves, 90
Pa. 161; Zebley v. Storey, 117 Pa. 478.

OPINION BY MR. JUSTICE MESTREZAT, February 19,
1912:

Nathaniel L. Fountain, the plaintiff, and A. J. Dunn,
a real estate broker, were jointly interested in real
estate speculations in Philadelphia in 1903 and in 1904.
To raise funds to carry on a proposed joint enterprise,
Fountain, at the request of Dunn, executed a mortgage
on his real estate, dated December 9, 1904, with the
name of the mortgagee presumably in blank, and left
it with Dunn with instructions not to place it without
notice to Fountain. In violation of these instructions,
Dunn, without Fountain's knowledge or consent,
placed the mortgage and received a check for the pro-

ceeds, amounting to $1,164.75, drawn to Fountain's order. The check was endorsed with Fountain's name, without his knowledge or consent. Immediately beneath the endorsement of his name, Dunn wrote his own name and deposited the check and received credit for the amount in his bank account. Fountain did not know that the mortgage had been placed until notice in the foreclosure proceedings was posted on his property. Dunn does not deny that he still owes Fountain the proceeds of the check.

About May 1, 1906, Dunn was arrested on two informations made by Fountain charging him with obtaining money under false pretenses. Dunn was held by the magistrate for trial and subsequently the grand jury found true bills. In 1909 the cases were tried and the defendant was acquitted.

Dunn, being indebted to Fountain in various sums, including the amount of the check, gave the latter, on September 10, 1906, a bond with warrant of attorney to confess judgment, with Mrs. Mary A. Bigham, his mother-in-law, as surety conditioned for the payment of $2,500 in one day after date. Judgment was entered on the bond on the next day. After two instalments of interest had been paid on the judgment and default as to the third instalment, execution was issued. Mrs. Bigham presented her petition to the court below and, for the reasons therein set forth, obtained a rule to stay the writ, open the judgment and let her into a defense. The rule was made absolute. The case was tried on the plea of non assumpsit, and having resulted in a verdict and judgment for the plaintiff, Mrs. Bigham took this appeal. Dunn did not appeal.

Mrs. Bigham alleges that the bond is invalid and not enforceable against her for the following reasons: (a) it was given in consideration of compounding a forgery, (b) the consideration failed because part thereof was the discontinuance of the prosecutions for false pretenses which were tried, (c) the prosecutions

were instituted solely for the collection of a debt, (d) the bond was executed under the influence of threats and coercion, (e) and part of the consideration was an agreement to settle the prosecutions for false pretenses without leave of the court.

The appellant has filed nineteen assignments of error, but as said by Mr. Justice STRONG in Fulton v. Hood, 34 Pa. 365, 369, "many of them are but repetitions of others, clothed in a dress slightly different, but having the same body."

If the consideration of the bond given by Dunn and Mrs. Bigham was the compounding of a forgery, it will be conceded, we think, that there can be no recovery against either of the obligors. The tenth section of the Act of March 31, 1860, P. L. 382, 1 Purd. 917, provides, inter alia, as follows: "If any person having a knowledge of the actual commission of any * * * forgery * * * shall take money, goods, chattels, lands or other reward, or promise thereof, to compound or conceal, or upon agreement to compound or conceal, the crimes aforesaid, every person so offending shall be guilty of a misdemeanor." The burden of showing the commission of the offense is, in the present case, on the defendant who sets it up to defeat liability on the bond. The essential ingredients of the crime, it will be observed, are: that a forgery was committed, that the obligee in the bond had knowledge of the actual commission of the offense at the time he took the bond, and that in consideration of being given the bond to secure his indebtedness, he agreed "to compound or conceal the crime." The forgery alleged, it will be recalled, was endorsing Fountain's name on the check made payable to him for the proceeds of the mortgage which he had executed and left with Dunn to be negotiated. The forgery was clearly proved by Fountain's own testimony and, hence, must be regarded as conclusively established. It is likewise settled, if the evidence is credible, that Fountain knew of the forgery prior to the

execution and delivery of the bond.  He denies, however, that he knew that Dunn had committed the crime. But the act of assembly, as will be observed, only requires that the party compounding the forgery shall know that the offense has been actually committed, and that the obligation was taken to stifle a prosecution of the guilty party whoever he may be.  The gist of the offense is the agreement not to prosecute the crime, known by the injured party to have been committed, in consideration of his receiving the obligation.  If, for instance, several persons had been suspected, and Fountain had agreed not to prosecute the real culprit, he would have been guilty of the statutory offense.  It is "a knowledge of the actual commission of any forgery," and not a knowledge of the party who committed the forgery, that is an essential element of the offense.  This distinction is most important and clearly supported by the language and the manifest purpose of the statute. If, however, it be conceded that the burden was upon the defendant to show that the party accepting the bond knew that Dunn committed the forgery, we think the burden was met by the introduction of evidence by the defendant which, if believed, warranted a finding that Fountain knew that Dunn was the guilty party.  Certainly no higher degree of proof of the party who committed the forgery should be required than the degree of proof of the forgery itself where it is denied, and we have held that it is only necessary to establish the commission of the offense by a preponderance of testimony. In Swope v. Jefferson Fire Insurance Co., 93 Pa. 251, where guilt of the felony was in issue we said (p. 254) : "The guilt of the party accused and an agreement not to prosecute are essential ingredients in the compounding of a felony.  Though the proof of guilt need not be of that conclusive character that would be necessary to convict, there should be at least such preponderance of evidence as will justify the jury in finding that a felony was committed."  In this case, the uncontradicted tes-

timony shows that Fountain knew before he demanded the bond the following facts: Fountain and Dunn were jointly interested in the real estate speculations; the former left with Dunn the mortgage to be negotiated when the money was needed in their business; without Fountain's knowledge, Dunn negotiated the mortgage and received a check for the proceeds made payable to Fountain's order; the check bore Fountain's forged endorsement and Dunn's immediately subsequent endorsement which was genuine, and was deposited in the bank to Dunn's credit. These facts were known to Fountain at the time he made the alleged threat that if a bond were not given as security for the payment of the proceeds of the check he would prosecute Dunn for forgery. The threat to prosecute Dunn was in itself evidence to be submitted to the jury of Fountain's knowledge that Dunn had committed the forgery. The court should therefore have instructed the jury that the defendant was only required to show that Dunn committed the forgery by such preponderance of evidence as would warrant the jury in finding the fact.

Swope v. Jefferson Fire Insurance Co., 93 Pa. 251, does not, as contended, sustain the plaintiff's position. What was decided in the case, was, as correctly appears by the syllabus, that to avoid a contract made to compound a felony, "it must be shown that there was an agreement not to prosecute, and it must appear by a preponderance of evidence that a crime was actually committed." In the case at bar, it is conceded by all parties that a forgery was committed and, hence, must be taken as established. In the Swope case, that was an issue and this court held that the commission of the offense had not been proven, saying (p. 254): "If all the allegations of fact embodied in the offers had been proved, they were not sufficient to justify the jury in finding that Albert was guilty of the crime laid to his charge."

The other or third ingredient of the crime which the defendant must prove is that the party taking the obligation agreed not to prosecute the person guilty of the offense. Each party introduced evidence which would have warranted the jury in sustaining his contention on this feature of the case. It was a fact to be determined, under proper instructions, by the jury from the evidence submitted.

It follows from what has been said that we must sustain the sixteenth assignment of error.

The defendant further contends that there was a failure of consideration for the bond because as part of the consideration therefor the plaintiff agreed to withdraw the prosecutions for false pretenses then pending against Dunn which he failed to do, and the prosecutions went to trial. The plaintiff denied that he had made any such agreement and the court submitted the question to the jury with the result that the finding was against the defendant. This finding also concludes the defendant as to her contention that there was an agreement between Fountain and Dunn to settle the false pretense cases without leave of the court.

That a contract obtained by duress or acts of coercion or intimidation may be invalidated is well settled. Under such circumstances, the party coerced is not exercising his free will but executing the will of the party who subjects him to the coercion, and, therefore, the instrument bearing his signature is not the contract of the party against whom it is sought to be enforced. Such contracts are procured by duress and may be invalidated. The test of duress is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed,—the fear which made it impossible for him to exercise his own free will: Williamson-Halsell Frazier Co. v. Ackerman (Kan.) 20 L. R. A. (N. S.) 484. The threat must be of such a nature and made under such circumstances as to constitute a reasonable and ade-

quate cause to control the will of the threatened person and must have that effect, and the act sought to be avoided must be performed by such person while in such condition: Wolff v. Bluhm, (Wis.) 60 Am. St. Rep. 115. But where one has a just claim against another for money obtained by the commission of a crime, it is not unlawful for the creditor to threaten to prosecute if the claim is not paid, and a contract cannot be avoided which the debtor enters into to secure payment of the claim, unless the creditor attempts by such threat to accomplish an unlawful purpose. In other words, a threat of lawful imprisonment is not duress, unless it is made for an unlawful purpose, such for instance, as compelling the satisfaction of a debt by payment in money or by the execution of an obligation to secure it. If in connection with the threat it appears that the creditor declared he would prosecute if the claim was not paid, with other evidence showing that his intention was to use the criminal process to collect the debt or to accomplish any unlawful purpose, a jury might well find that such was the purpose of the creditor in making the threat and that, therefore, it was duress. In delivering the opinion in Baker v. Morton, 79 U. S. 150, CLIFFORD, J., says (p. 158): "Where a party enters into a contract for fear of loss of life, or for fear of loss of limb, or fear of mayhem, or for fear of imprisonment, the contract is as clearly void as when it was procured by duress of imprisonment, which is where there is an arrest for an improper purpose without just cause, or where there is an arrest for a just cause but without lawful authority, or for a just cause but for an unlawful purpose, and the rule is that in either of those events the party arrested, if he was thereby induced to enter into a contract, may avoid it as one procured by duress." This doctrine is reiterated in Richardson v. Duncan, 3 N. H. 508. It is, therefore, immaterial whether Fountain, when he made the alleged threat, knew or did not know that he had a criminal case against Dunn, as he

could not lawfully compel the execution of the bond by threats to prosecute made for such a purpose.

In this case, however, Dunn is not contesting the validity of the bond, but the present appeal was taken by Mrs. Bigham, his mother-in-law, the surety on the bond. Can she avoid the obligation on the ground of duress exercised on Dunn? The general rule undoubtedly is that the defense of duress is open only to the party upon whom it is imposed, and that a third party who has become surety for the payment of the claim cannot avail himself of the plea unless he signed the obligation without knowledge of the duress. There are certain exceptions to the rule as well established as the rule itself. These exceptions include husband and wife and parent and child, and either may avoid his contract made to relieve the other from duress. The exceptions have been extended to grandmother and grandson: Bradley v. Irish, 42 Ill. App. 85; aunt and nephew: Sharon v. Gager, 46 Conn. 189; sister and brother: Schultz v. Catlin, 78 Wis. 611; father-in-law and son-in-law: Snyder v. Willey, 33 Mich. 483; Nebraska Mutual Bond Association v. Klee, 70 Neb. 383; brother and brother: Davis v. Luster, 64 Mo. 43. The reason for avoiding a contract on the ground of duress, as appears above, is that the condition of mind of the party upon whom the duress is imposed is such as to deprive him of the exercise of his free will. Whatever influence produces such a condition of mind will invalidate a contract executed while the influence prevails. The relations between parent and child and husband and wife are so close and tender that the law recognizes that threats to imprison one will have substantially the same effect on the mind of the other, and what will deprive the one of the free exercise of his will or judgment will have a like effect on the other. The reason of the rule will extend it to the case of a mother-in-law and son-in-law where the latter is living amicably with his wife, and the two families are on the usual terms of intimacy

and friendship. In holding that duress to a child will relieve a parent from his obligation, MORTON, J., in Harris v. Carmody, (Mass.) 41 Am. Rep. 188, said (p. 190) : "No more powerful and constraining force can be brought to bear upon a man, to overcome his will and extort from him an obligation, than threats of great injury to his child. Both upon reason and upon the weight of the authorities we are of opinion that a parent may avoid his obligation by duress to his child." A mother's affection for her daughter would under ordinary circumstances compel protection against grief and sorrow of the latter by affording relief to the son-in-law. The daughter's happiness depends upon her husband's happiness, and in protecting the one the mother assures the other. This is everyday experience and the law recognizes the fact. In Loud v. Hamilton, (Tenn.) 45 L. R. A. 400, the court says (p. 405) : "We are inclined to the opinion that where a son-in-law and his wife are living in harmony, and there is nothing to show any estrangement between the father-in-law and the son-in-law, the latter would stand in the same relation, so far as concerns the present question as would the daughter herself. It is without doubt true that the danger to the son-in-law, and the consequent grief and terror of the daughter, would act upon the father's heart with substantially the same force as if the daughter herself were in danger, or, at least, nearly so."

We think the learned court below should have submitted to the jury with proper instructions whether, owing to the relationship of the parties and the circumstances disclosed by the testimony, the bond was Mrs. Bigham's voluntary act, or was executed under threats of prosecution of her son-in-law which deprived her of the exercise of her free will. The eighteenth and nineteenth assignments are sustained.

The testimony, the exclusion of which is the subject of the third and fourth assignments, should have been admitted. It tended to show, as disclosed by the offers,

that the threats "were part of a system of threats and coercion brought to bear upon different members of the families of both defendants for the purpose of inducing the signing of the bond" and "were communicated to her (Mrs. Bigham) and were the inducing cause of her signing this bond, and was the only consideration therefor." If threats were made for the purpose stated, although not in her presence but with the intention that they should be communicated by others to Mrs. Bigham for the purpose of coercing her into signing the bond, it was competent to show the threats, that they were communicated to her, and what, if any, effect they had in inducing her to sign the bond: Ditto v. Slaughter (Ky.) 92 S. W. Repr. 2; Schultz v. Catlin, 78 Wis. 611; Snyder v. Wiley, 33 Mich. 483. Moyer v. Dodson, 212 Pa. 344, did not warrant the exclusion of the above offers of evidence. In that case, a scire facias on a mortgage, the defendant executed the mortgage after being examined separate and apart from her husband and the officer certified that she signed the instrument of her own free will, and it was conceded that the mortgagee made no threats to the defendant, did not authorize them to be communicated or knew that they would be communicated to her, was not present if they were made to her, and did not know when he accepted the mortgage that they had been communicated to her.

The question included in the first assignment was properly excluded. The plaintiff had the right to accept the bond to secure the indebtedness, but he could not accept it in consideration of stifling a prosecution for forgery. The question, the answer to which was excluded in the second assignment, was substantially the same as was subsequently asked and permitted to be answered. The question of estoppel is not in the case and the requests for instructions relative thereto were properly refused.

The judgment is reversed with a venire de novo.