SKILLMAN *v*. M. J. CLARK MEMORIAL HOME.

CANCELLATION OF INSTRUMENTS—MORTGAGES — SECURITIES VOLUNTARILY SIGNED BY WIFE TO MAKE RESTITUTION FOR HUSBAND'S EMBEZZLEMENT WILL NOT BE SET ASIDE.

> In a suit by a wife to have set aside certain securities, in the signing of which she joined with her husband for the purpose of making partial restitution for his embezzlement, where it appeared that no promises were made that the husband would not be prosecuted, that the offer of restitution originated with him, and that plaintiff joined with him voluntarily and with the motive of doing the right thing, the fact that the husband was afterwards convicted and sentenced, and that plaintiff did not have legal advice to the effect that she could not be compelled to sign, *held*, insufficient ground for cancellation, and the bill was, therefore, properly dismissed by the court below.[1]

Appeal from superior court of Grand Rapids; Verdier (Leonard D.), J. Submitted October 8, 1924. (Docket No. 28.) Decided December 31, 1924.

Bill by Jennie E. Skillman against the M. J. Clark Memorial Home and another to set aside certain securities. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Howard A. Ellis,* for plaintiff.

*Elvin Swarthout* (*Fred P. Geib,* of counsel), for defendants.

WIEST, J. The M. J. Clark Memorial Home, at Grand Rapids, is a corporation organized by Methodists in the interest of retired ministers, their wives,

---

[1] Cancellation of Instruments, 9 C. J. § 195.

widows, and other aged persons.    For many years, Lawton L. Skillman, husband of plaintiff, was treasurer of the Home.    While such treasurer he embezzled $29,500, and on November 22, 1922, confessed his crime to his wife and then to officers of the Memorial Home.    The embezzled money was used by Mr. Skillman in the Skillman Lumber Company, a corporation with a capital of $10,000, with the capital stock mostly held by Mr. Skillman, but of which plaintiff held 50 shares of the par value of $500. Having confessed his crime, Mr. Skillman was desirous of turning over to the victim such security as he could.    His property interests consisted of a home in Grand Rapids in the name of himself and wife, an interest under land contract in his name in a parcel of land in Grand Rapids, and an interest in a parcel of land at Gun lake under land contract in which he and his wife were vendees.    At the solicitation of her husband, and moved by a spirit of doing the right thing, and incidentally hoping to save her husband from prosecution and herself the humiliation of publicity of his crime, plaintiff joined with him in giving the Memorial Home a mortgage for $5,000 on their home and assignments of the land contracts to secure the payment of an additional $6,000.    Thereafter the surety on the bond given by Mr. Skillman as treasurer threatened to make trouble, and Mr. Skillman endeavored to raise $10,000, the penalty of the bond, but gave up the effort and, about a month after giving the securities to the Memorial Home, he pleaded guilty to the crime of embezzlement and was sentenced.

Plaintiff filed the bill herein to set aside the securities so given the Memorial Home, claiming she was led to execute the same by assurances given by representatives of the Memorial Home that the embezzled money would be treated as a loan, no publicity would be given the matter, and this engendered the hope

on her part that her husband could be saved from prison. At the conclusion of plaintiff's proofs the trial judge held she had made no case for relief and dismissed the bill. Plaintiff appealed.

We agree with the learned trial judge. Mr. Skillman was not promised immunity, knew he was not saving himself from prosecution, and he and plaintiff in giving the securities were but trying to save the Memorial Home from loss. We are persuaded that plaintiff was perfectly willing to aid her husband, as she did, in making such amends to the Memorial Home, and she was content therewith until she found his crime would be given publicity, and then she endeavored to find a way to take back what she had so given.

Plaintiff claims she was suffering such mental disquietude at the time she joined with her husband in executing the instruments that she did not sense her rights or appreciate what she was doing. Immediately after signing the instruments she attended a public dinner and the "Pink Ball" and took part in dancing. She claims she did this to keep up appearances. Her mental faculties appear to have served her well at such functions.

Plaintiff also claims she was not aware of her rights when she joined with her husband in executing the instruments and did not have the advice of an attorney. We apprehend that, at the time she so joined with her husband, full knowledge of right to prevent any restitution would not have stayed her desire to join with her husband in doing the right thing. She acted from choice and not by reason of duress. She needed no legal advice to do right, and such advice would have amounted to no more than telling her she could do as she pleased. She cannot now be heard to say that, had she been advised by an attorney that she was not obliged to pledge her property interests in partial satisfaction of her husband's defalcation, she

would not have followed the dictates of what she then considered the right thing for her to do. This bill is an effort to undo what she by choice elected to do, when the great wrong committed by her husband was brought to her attention and she had had a week in which to give consideration to his crime. She was then moved by a sense of what she ought to do, and she cannot now retrace her steps and ask that her acts be set aside because she has since found out the law would not have compelled her to act as she then wanted to and did act.

Mr. Skillman had at least as much interest in the property as plaintiff. The money embezzled by him was used in the business of the Skillman Lumber Company, in which plaintiff was interested as a stockholder, and, while she knew nothing about the taking of the money or its use until Mr. Skillman confessed to her, it is quite persuasive that she felt she wanted to join with her husband in making his wrong as light as possible to the old and helpless of the Memorial Home. It was a worthy motive, and we are disposed to let plaintiff have the credit thereof rather than the stigma of repudiation.

Plaintiff has utterly failed to persuade us that any one representing the Memorial Home held out to her the assurance her husband would secure immunity if the securities were given. Every one understood fully the nature of the crime committed by Mr. Skillman, and there is not the least evidence tending to show that representatives of the Memorial Home intended to, took part in, or did compound the felony. The Memorial Home righteously accepted what the plaintiff and her husband honorably gave.

Cases cited by counsel for plaintiff are easily set apart from this case. See *Hanson* v. *Loescher,* 221 Mich. 387. The offer to make pecuniary amends originated with Mr. Skillman and received the hearty co-operation of plaintiff. Instead of coercion, we find

co-operation; instead of threats causing fear and disquietude, we find prayers for comfort; instead of an exacted sacrifice, we find a free will offering. There exists no good reason for granting plaintiff relief.

This disposition of the case renders it unnecessary to consider defendants' motion to dismiss the appeal on technical grounds.

The decree dismissing the bill is affirmed, with costs to defendants.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.