NATIONAL SURETY CO. *v.* McLEOD.

1. DURESS—DEFINITION—WORDS AND PHRASES.

   Duress is such pressure or constraint as compels a person to go against his will and virtually takes away his free agency, and destroys the power of refusing to comply with the unlawful demand of another.

2. SAME—FATHER-IN-LAW WITHIN DEGREE OF RELATIONSHIP UPON WHOM DURESS COULD BE APPLIED.

   A father-in-law is in the degree of relationship of one upon whom duress could be applied by threat made against his son-in-law.

3. SAME—CRIMINAL LAW THREATS MAY NOT BE USED TO COERCE ADJUSTMENT OF SON-IN-LAW'S DEFALCATION.

   Criminal law is public law, and it is a perversion thereof to employ its power or threaten to do so in order to coerce a father-in-law into making a pecuniary adjustment of his son-in-law's defalcation.

4. SAME—BILLS AND NOTES—WEIGHT OF EVIDENCE.

   In an action on a note claimed by defendant to have been obtained from him under duress by threats to imprison his son-in-law for defalcation, a verdict in favor of defendant, *held*, not against the weight of the evidence on the question of duress.

5. SAME—EFFECT OF COERCIVE THREATS AN ISSUE — TESTIMONY THEREON ADMISSIBLE.

   In such action, the effect of the threat was an issue, and it was permissible for defendant to state the coercive influence actually experienced by him at the time, but he should have awaited inquiry into that subject and not volunteered statements relative thereto.

6. APPEAL AND ERROR — VOLUNTEERING ADMISSIBLE TESTIMONY NOT REVERSIBLE ERROR.

   Inasmuch as it was permissible for defendant, in an action on a note claimed to have been obtained from him by duress, to state the effect of the coercive influence actu-

---

[1]Contracts, 13 C. J. § 310; 9 R. C. L. 726; 2 R. C. L. Supp. 865; 4 R. C. L. Supp. 622; 6 R. C. L. Supp. 572; [2]Id., 13 C. J. § 325; [3]Id., 13 C. J. § 315; [4]Bills and Notes, 8 C. J. § 1361; [5]Evidence, 22 C. J. § 704; Witnesses, 40 Cyc. p. 2444; [6]Appeal and Error, 4 C. J. § 2952.

ally experienced by him at the time, the fact that he volunteered statements relative thereto instead of awaiting inquiry thereon is not reversible error.

7. SAME—ADMISSION OF TESTIMONY AS TO FINANCIAL CONDITION NOT REVERSIBLE ERROR.

In said action, defendant had no right to lay before the jury his financial condition, but error in permitting him to do so does not call for reversal.

Error to Genesee; Black (Edward D.), J. Submitted June 8, 1927. (Docket No. 27.) Decided October 3, 1927.

Assumpsit by the National Surety Company against Thomas C. McLeod on a promissory note. Judgment for defendant. Plaintiff brings error. Affirmed.

*Van Benschoten & Millard,* for appellant.

*Clarence Tinker, Roy E. Brownell,* and *Ralph E. Gault,* for appellee.

WIEST, J. Plaintiff sued defendant on a promissory note. Defendant pleaded fraud and duress and asked judgment in his favor for $2,310.10 he claims he paid plaintiff, under duress, at the time the note was executed. A jury found the alleged duress and defendant had verdict and judgment for the money so paid. Plaintiff reviews by writ of error, and the important question presented is whether a father-in-law can avail himself of the doctrine of duress to defeat liability on a note given under threat of the alternative of immediate imprisonment of his son-in-law.

Clyde Haskell, son-in-law of defendant, was engaged in the retail automobile business in the city of Toledo, Ohio, and obtained automobiles upon the "floor plan" through the Commercial Investment Trust Company,

---

⁷Appeal and Error, 4 C. J. § 2952.

a financial corporation, which, in turn, was protected by a bond issued by plaintiff company. Haskell became financially involved and sold several automobiles which he had purchased upon the floor plan and converted the money to his own use to the extent of $5,110.10. The trust company called upon plaintiff surety company under its bond for reimbursement. A representative of plaintiff visited Toledo to investigate. Haskell was unable to pay and called defendant to Toledo. Defendant, who lives at Fenton, this State, went to Toledo, February 13, 1924, and from there telephoned for his banker, Charles Campbell of Fenton, to come to Toledo. Mr. Campbell went to Toledo on February 14th, the day the note in suit was signed. On that day a settlement was made between the plaintiff's representative and defendant, under which Haskell turned over $800, which he had in his possession, defendant gave a check for $2,310.10 upon a bank in Fenton, and defendant and Haskell signed the note in suit.

Defendant claims plaintiff's representative threatened that, unless part of Haskell's defalcation was paid forthwith and the balance secured by paper signed by defendant, Haskell would be immediately handcuffed, taken away, and sent to prison, and would be in Leavenworth just as quick as he could get the papers out, and, under such compulsion, and nervous tension induced thereby, defendant paid the sum of $2,310.10 and executed the note in suit. The jury found the threats were made, and, under compulsion occasioned thereby, the note was executed and the money paid.

The court instructed the jury, in accordance with the definition in *Hackley* v. *Headley*, 45 Mich. 569, that:

"Duress is such pressure or constraint as compels a person to go against his will and virtually takes away his free agency, and destroys the power of refusing to comply with the unlawful demand of another."

The court also instructed the jury that a father-in-law is in the degree of relationship of one upon whom duress could be applied by threat made against his son-in-law.

Counsel for plaintiff cite *Wolf* v. *Troxell's Estate,* 94 Mich. 573, and quote therefrom the following:

"The weight of authority is to the effect that imprisonment of one cannot be treated as duress or constraint of another. The case of husband and wife is exceptional, they being treated as one in law."

Counsel also state:

"This doctrine has been extended in the case of a mother and son (*Weiser* v. *Welch,* 112 Mich. 134), the case of a father and son (*Detroit National Bank* v. *Blodgett,* 115 Mich. 160), and in the case of father and daughter (*Hanson* v. *Loescher,* 221 Mich. 387), but nowhere are we able to find where the Michigan court has extended the doctrine to father-in-law and son-in-law, although it has been done in one or two other jurisdictions. We are of the opinion that the doctrine should not be extended any farther away from the general rule as laid down in *Wolf* v. *Troxell's Estate,* cited above."

In *Snyder* v. *Willey,* 33 Mich. 483, the doctrine of duress was applied to father-in-law and son-in-law. The *Snyder Case* is cited with approval in *Fountain* v. *Bigham,* 235 Pa. 35 (84 Atl. 131, Ann. Cas. 1913D, 1185). In the latter case the court stated:

"In this case, however, Dunn is not contesting the validity of the bond, but the present appeal was taken by Mrs. Bigham, his mother-in-law, the surety on the bond. Can she avoid the obligation on the ground of duress exercised on Dunn? The general rule undoubtedly is that the defense of duress is open only to the party upon whom it is imposed, and that a third party who has become surety for the payment of the claim cannot avail himself of the plea unless he signed the obligation without knowledge of the duress. There are certain exceptions to the rule as well established as the rule itself. These exceptions

include husband and wife and parent and child, and either may avoid his contract made to relieve the other from duress. The exceptions have been extended to grandmother and grandson: *Bradley* v. *Irish*, 42 Ill. App. 85; aunt and nephew: *Town of Sharon* v. *Gager*, 46 Conn. 189; sister and brother: *Schultz* v. *Catlin*, 78 Wis. 611 (47 N. W. 946); father-in-law and son-in-law: *Snyder* v. *Willey*, 33 Mich. 483; *Nebraska Mutual Bond Ass'n* v. *Klee*, 70 Neb. 383 (97 N. W. 476); brother and brother: *Davis* v. *Luster*, 64 Mo. 43. The reason for avoiding a contract on the ground of duress, as appears above, is that the condition of mind of the party upon whom the duress is imposed is such as to deprive him of the exercise of his free will. Whatever influence produces such a condition of mind will invalidate a contract executed while the influence prevails. The relations between parent and child and husband and wife are so close and tender that the law recognizes that threats to imprison one will have substantially the same effect on the mind of the other, and what will deprive the one of the free exercise of his will or judgment will have a like effect on the other. The reason of the rule will extend it to the case of a mother-in-law and son-in-law where the latter is living amicably with his wife, and the two families are on the usual terms of intimacy and friendship. * * * A mother's affection for her daughter would under ordinary circumstances compel protection against grief and sorrow of the latter by affording relief to the son-in-law. The daughter's happiness depends upon her husband's happiness, and in protecting the one the mother assures the other."

See, also, *Farmers' State Bank* v. *Dowler*, 112 Neb. 262 (199 N. W. 528), where it was said, quoting from the syllabus:

"The general rule of law that a person who signs a contract for the benefit of another is not ordinarily under duress is subject to exceptions growing out of intimate ties of blood or marriage, and the exceptions may include a son-in-law."

See, also, 9 R. C. L. p. 727.

Criminal law is public law, and it is a perversion thereof to employ its power or threaten to do so in order to coerce a father-in-law into making a pecuniary adjustment of his son-in-law's defalcation.    Even if the son-in-law is guilty and amenable to the criminal law, one wronged by his crime may not threaten employment of such public law to obtain a private pecuniary composition.    The trial court was not in error in the instructions given the jury upon the subject of duress.    There was evidence clearly supporting the verdict and we cannot hold it was outweighed by contrary evidence.

Complaint is made of emotional conduct of defendant while a witness and volunteered statements made by him relative to the effect of the threats at the time he ·consented to sign the note.    Emotion shammed for mere effect is reprehensible, but the record does not convict defendant of such an· exhibition.    The effect of the threat was an issue and it was permissible for defendant to state the coercive influence actually experienced by him at the time.    He should, however, have awaited inquiry into that subject. We do not consider mere form master of substance. Defendant had no right to lay before the jury his financial condition.    This error, however, does not call for reversal.

The other errors assigned have been examined and present no reversible error.

The judgment is affirmed.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, CLARK, and MCDONALD, JJ., concurred.