PAYNE *v.* CAVANAUGH.

1. MORTGAGES—DURESS—EVIDENCE.

In suits to foreclose mortgages securing notes given by defendant who claimed they were given because of fraud, duress and coercion, such contentions were not sustained under record showing that the secured notes were substituted by defendant to cover previous unsecured notes of defendant, her son and daughter which had been given while the son was president of payee bank, allegedly to avoid possible criticism and criminal proceedings against son after another person had become president, that defendant was a woman experienced in legal work, real estate, and business and had considerable time in which to consider the matter, there was no threat of immediate punishment of son and no evidence of duress or undue influence upon defendant.

2. DURESS—CONTRACTS—TIME.

Duress will not prevail to invalidate a contract entered into with full knowledge of all the facts, with ample time and opportunity for investigation, consideration, consultation, and reflection.

3. MORTGAGES—CREDITS—REPURCHASE OF COLLATERAL.

Claim for credit upon notes secured by mortgages being foreclosed by reason of sale of chattels securing other notes at a price less than their fair market value is denied where, in trial court, plaintiff agreed that defendant might repossess her collateral upon payment of price paid by plaintiff at the sale with interest at 5 per cent. and plaintiff receiver released all claim thereto when defendant availed herself of such opportunity.

Appeal from Van Buren; Warner (Glenn E.), J. Submitted October 19, 1939. (Docket No. 157, Calendar No. 40,836.) Decided March 15, 1940.

Six separate bills by W. R. Payne, receiver of the First National Bank of Paw Paw, Michigan, against

Gail H. Cavanaugh for foreclosure of mortgages and deficiency decrees. Cases consolidated for trial and appeal. Decrees for plaintiff. Defendant appeals. Affirmed.

*Ross H. Lamb,* for plaintiff.

*Lewis R. Williams,* for defendant.

McALLISTER, J. Defendant was indebted to the First National Bank of Paw Paw on promissory notes. Her son and daughter were likewise indebted on their personal obligations. None of the notes were secured by collateral. On April 8, 1932, the officials of the bank secured from defendant new notes covering the indebtedness of defendant as well as that of her son and daughter. The new notes were signed by defendant alone and secured by real estate mortgages, being a substitution of the previous indebtedness against all of the aforementioned parties. In proceedings to foreclose the mortgage by the bank, defendant filed answer, claiming that the notes and mortgages were void on the ground that fraud, duress, and coercion were used by the bank in bringing about their execution. Certain pledged chattels also having been given as security for other notes, defendant further claimed that the chattels were sold at less than fair market value by the bank and that she is entitled to credit therefor on the mortgage indebtedness. The trial court denied the claims of defendant and granted foreclosure of the real estate mortgages of defendant. Defendant appeals.

It is argued that certain statements made by the president of the bank to the defendant constituted the fraud, coercion, and duress complained of. Defendant's son had previously been president of the

bank. Prior to the time the plaintiff executed the mortgages in question, Mr. Radcliff, the then president of the bank, called on defendant and stated that defendant's son would be subject to criticism because of his conduct of the business of the bank. Defendant testified that Mr. Radcliff stated that he was familiar with some items "which, if brought to the attention of the Federal Reserve, would probably lead to the arrest of my son and perhaps Leavenworth, and that if I would make the security and take up these notes, all would be forgiven." In the month following the statements made by Mr. Radcliff, defendant prepared notes and mortgages and carried on negotiations with the other officers of the bank to accept such notes in place of her previous obligations and those of her son and daughter.

Plaintiff was a woman experienced in legal work, real estate, and business. She had been a real estate broker and had previously borrowed from banks on collateral security. There was considerable time afforded for reflection, investigation, consultation, and consideration of the matter by defendant. There was no threat of immediate punishment or imprisonment, and there is no evidence of either duress or undue influence on the part of Mr. Radcliff, or the officials of the bank, in order to secure the notes and mortgages from defendant. In *National Surety Co. v. McLeod,* 240 Mich. 360, 362, cited by defendant, it appears that there was a threat of immediate imprisonment of the party's son-in-law and that unless his defalcation was paid forthwith and the balance secured by notes signed by defendant, "Haskell would be immediately handcuffed, taken away, and sent to prison, and would be in Leavenworth just as quick as he (the plaintiff's representative) could get the papers out."

We are of the opinion that defendant's contentions with regard to duress, coercion, and fraud are not sustained. Duress will not prevail to invalidate a contract entered into with full knowledge of all the facts, with ample time and opportunity for investigation, consideration, consultation, and reflection. *Clement* v. *Buckley Mercantile Co.*, 172 Mich. 243. In *Seymour* v. *Powers*, 255 Mich. 624, a case involving similar facts, the court said:

"There was no fraud, duress, or coercion. It was the duty of the sons to make restitution, and was within the law for their father and stepmother to aid them in doing so. *Hanson* v. *Loescher*, 221 Mich. 387. The sons of Charles Powers wanted to make restitution and get released from civil restraint, their father and stepmother were willing to help them; their release could be obtained if plaintiff would indorse notes, and he was willing to do so if secured by mortgage. The sons induced their father and stepmother to execute the necessary mortgage and plaintiff made the requisite indorsements. To the extent that plaintiff was required to respond on account of his indorsements the mortgage was valid."

See, also, *Hanson* v. *Loescher*, 221 Mich. 387; *Skillman* v. *M. J. Clark Memorial Home*, 229 Mich. 547.

With regard to defendant's claim that certain collateral pledged as security for other notes was sold at less than fair market value and that defendant is entitled to credit therefor on the mortgage indebtedness in this case, it appears that before final disposition of the controversy in the trial court, plaintiff agreed that defendant might repossess her collateral on payment of the price paid by plaintiff at the sale, with interest thereon at five per cent., and that at the request of defendant, the collateral

was turned over to parties designated by her upon the terms above specified, and the receiver released all claim to such collateral.

Decrees affirmed, with costs to plaintiff.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.